BARBARA SEBALD, Appellant, *v.* JAMES MULHOLLAND,
Respondent.

1. RIGHT TO BUILD TO STREET LINE — EFFECT OF PARTY-WALL CON-
TRACT. The owner of land is not prevented from building thereon to the
street line by a party-wall agreement which provides that that wall shall
not extend nearer the street than the front wall of an existing building.

2. COVENANT NOT RUNNING WITH LAND — AS TO PAYMENT FOR PARTY
WALL. An agreement to pay a portion of the value of a party wall
whenever it shall be used by the promisor or his personal representatives
is not a covenant running with the land, although the contract for the

party wall expressly provides that it shall be perpetual and at all times be construed as a covenant running with the land; the right to compensation is personal to the builder and does not pass to a grantee of his premises. But where it clearly appears that a contract was intended to relate only to the future use of the land, and there was no personal agreement by one party to build and by the other to pay, and a clear intent is shown to bind the land alone, the rule may be otherwise.

*Sebald* v. *Mulholland*, 11 Misc. Rep. 714, affirmed.

(Argued March 10, 1898; decided April 19, 1898.)

APPEAL from so much of a judgment of the General Term of the late Superior Court of the city of New York, entered January 10, 1895, as affirmed a judgment entered upon a decision of the court on trial at Special Term dismissing plaintiff's complaint on the merits.

On November 17, 1871, Robert Auld was the owner of an unimproved lot on West Forty-sixth street in the city of New York, known as lot No. 417. At the same time Philip C. Agnew was the owner of an adjacent lot, known as lot No. 415, which was also unimproved. Auld contemplated building upon his lot two feet back from the street line, and on that day entered into a written agreement with Agnew, which was recorded December 8, 1871, which, so far as material, was as follows :

" This agreement, made and entered into on the 17th day of November, 1871, between Robert Auld, of the city of New York, of the first part, and Philip Agnew, also of said city, of the second part, witnesses, that,

" WHEREAS, the said parties are each the owners of a lot of land situated on the northerly side of Forty-sixth street, between the Ninth and Tenth avenues, in the city of New York, and which said lots lie adjacent to each other, * * *

" And WHEREAS, the said Robert Auld is about to erect a building upon his lot of land, and it has been agreed between said parties that the wall of said building shall be a party wall, and be constructed for one-half its thickness on the land of each party on each side of the said dividing line ;

" Now, therefore, the said parties, in consideration of the premises and one dollar paid by the said Auld to the said

Agnew, the receipt whereof is hereby acknowledged, have agreed, and do hereby mutually covenant and agree, each with the other, and for their respective heirs, administrators and assigns, that the said wall, so to be constructed, shall be used and maintained as a party wall forever; that the said Auld and his ........... shall be permitted freely and without ........... or hindrance to enter upon the lot of said Agnew to excavate for the said wall and for the construction of the same (here follows a description of the wall); said wall not to extend nearer the street than the front wall of the front building on the easterly side of said lots, from which point it may be extended back to a distance not exceeding 55 feet.

"And it is further agreed between the said parties that whenever the said Agnew or his personal representatives may desire to use said wall, he, or they, shall pay such proportion of the value of said wall as the portion thereof which he shall use shall bear to the whole of said wall, such value to be ascertained, in the event of a disagreement between the parties themselves as to the same, by arbitration; * * * and, further, that if it shall become necessary to repair or rebuild the whole or any portion of said wall, such repairing or rebuilding shall be borne equally between the said parties, or their representatives, as to such portions of the said wall as shall be used in common between them, and as to the remaining portions such repairing or rebuilding shall be wholly at the expense of the party who shall exclusively use the same, and whenever the said wall shall be rebuilt it shall stand upon the same spot and be of the same or similar materials and of the same size as the present wall unless the laws shall permit or require a wall of different dimensions.

"And it is further mutually understood and agreed between the aforesaid parties that this agreement shall be perpetual, and at all times be construed as a covenant running with the land, and that no part of the fee of the soil upon which the said party wall shall stand shall pass to or be vested in either party in or by these presents."

58

Subsequently, by various *mesne* conveyances, Auld's title to No. 417 became vested in the plaintiff, and Agnew's title to No. 415 was acquired by the defendant subject to such agreement. In 1872 Auld, while the owner of lot No. 417, erected a building thereon, the easterly wall of which was constructed as a party wall under such agreement, and now forms the easterly wall of the plaintiff's premises. In 1892 the defendant built upon lot No. 415 and used a portion of the party wall, which was agreed upon this trial to be of the value of $567.50, without paying or offering to pay the plaintiff one-half of the value of the portion so used. The defendant also extended his house to the street line of his own land, in consequence of which the front projects two feet beyond the front of the houses upon Nos. 417 and 413. On the seventh of January, 1893, the plaintiff offered to arbitrate with the defendant the question of the cost or value of the portion of the party wall used by him, but the defendant did not join in any appraisal, and refused to pay the value of the portion of the wall used.

This action was brought in the Superior Court of the city and county of New York, and was in the nature of a suit in equity. The first cause of action was to charge upon the land of the defendant a lien for the amount due by reason of his having used the party wall, and the second was to compel the removal of two feet of the front of the defendant's house, which extends to the front line, or that the plaintiff be awarded damages in lieu thereof.

The trial court held that the plaintiff was not entitled to any compensation from the defendant for the use of the party wall; that the defendant was not prevented by the agreement between the parties from building to the street line, and that the plaintiff's complaint should be dismissed.

The defendant set up as a counterclaim that the plaintiff had erected and maintained a newel post connected with the stoop to her house, which post and a portion of the railing were upon the land of the defendant and constituted an obstruction to the entrance and egress therefrom, and demanded as relief that

the defendant have judgment against the plaintiff directing her to take down and remove such newel post.

The trial court found that the post and railing of the plaintiff's stoop did not interfere in any substantial manner with the defendant's enjoyment of his premises; that they had not caused the defendant any damage, and held that he was not entitled to any equitable relief upon his counterclaim. It thereupon dismissed the plaintiff's complaint as to both causes of action, and also dismissed the defendant's counterclaim.

The plaintiff excepted to the conclusions of law as to the causes of action set up in her complaint, while the defendant excepted to the decision of the court in regard to his counterclaim. From the judgment entered upon the decision of the Special Term the plaintiff appealed to the General Term of the Superior Court. Her appeal was from so much of the judgment as dismissed her complaint. The defendant appealed from so much of the judgment as dismissed his counterclaim. The General Term affirmed the judgment of the trial court, and the plaintiff appeals to this court from so much of the judgment of the General Term as affirmed the judgment of the Special Term adjudging that the plaintiff's complaint should be dismissed, but the defendant has not appealed.

*John Frankenheimer* for appellant. The party-wall agreement being by its terms expressly declared to be perpetual and to be construed as a covenant running with the land, the covenant to pay for the wall when used became a covenant running with the land, the benefit of which inured to plaintiff as the subsequent grantee of Auld, and the burden of which fell upon defendant as the subsequent grantee of Agnew and as the person who used the party wall. (*Brown* v. *McKee*, 57 N. Y. 684; *Mott* v. *Oppenheimer*, 135 N. Y. 312; *King* v. *Wight*, 155 Mass. 444; 57 Mass. 500; 98 Mass. 317; 108 Mass. 184; 121 Mass. 459; *Talbot* v. *Frere*, L. R. [9 Ch. Div.] 568; *Broadwell* v. *Getman*, 2 Den. 87; *Bedell* v. *Kennedy*, 38 Hun, 510; 109 N. Y. 153; *Guentzer* v. *Juch*, 51 Hun, 397; 4 Kent's Comm. 472; 1 Smith's L. C. [9th ed.] 180;

*P. Ins. Co.* v. *C. Ins. Co.*, 87 N. Y. 400.) Even if the covenant to pay for the wall does not constitute a technical covenant running with the land, the defendant having, as is admitted, taken title to his premises subject to the party-wall agreement, and with notice of plaintiff's right in the premises, and plaintiff having paid a larger consideration for her premises on account of the said agreement, the defendant is liable to plaintiff in equity for the value of the wall used by him. (*P. Ins. Co.* v. *C. Ins. Co.*, 87 N. Y. 400; *Hodge* v. *Sloan*, 107 N. Y. 244.) The form of action embraced in the first cause of action and the relief prayed for thereunder were proper. (*Mott* v. *Oppenheimer*, 135 N. Y. 312; *Guentzer* v. *Juch*, 51 Hun, 397; *Bedell* v. *Kennedy*, 38 Hun, 510; 109 N. Y. 153; *Lough* v. *Outerbridge*, 143 N. Y. 271; *Baron* v. *Korn*, 127 N. Y. 224.) The covenant in the party-wall agreement that the party wall shall not be extended nearer the street than the front wall of the front building on the easterly side of the lots has been violated by defendant in the erection of his flat upon his premises, to the pecuniary injury of the plaintiff, and she is entitled to equitable relief by way of damages for such injury. (*Du Bois* v. *Darling*, 12 J. & S. 436; *P. Ins. Co.* v. *C. Ins. Co.*, 87 N. Y. 408; *Amerman* v. *Deane*, 132 N. Y. 355; *Welsh* v. *Taylor*, 134 N. Y. 450; *Bauer* v. *Gribbel*, 2 App. Div. 80; *Mott* v. *Oppenheimer*, 135 N. Y. 312; *Kingsland* v. *Tucker*, 115 N. Y. 574.)

*Edward W. Sheldon* for respondent. The covenant to pay for the use of the wall was personal in its nature, and did not inure to the plaintiff's benefit. (*Cole* v. *Hughes*, 54 N. Y. 444; *Scott* v. *McMillan*, 76 N. Y. 144; *Hart* v. *Lyon*, 90 N. Y. 663; 1 Jones on Real Prop. 801, § 800; *Mygatt* v. *Coe*, 147 N. Y. 456; *Nalle* v. *Paggi*, 81 Tex. 201; *Squier* v. *Townshend*, 2 City Ct. Rep. 142; *Kearr* v. *Sossan*, 9 N. Y. S. R. 25; *Scott* v. *McMillan*, 16 N. Y. S. R. 795; *Squires* v. *Pinkney*, 13 N. Y. S. R. 749; *Frohman* v. *Dickinson*, 11 Misc. Rep. 9.) This party-wall agreement cannot fairly be construed as permanently preventing the construction by the

defendant of an independent wall on his own lot. (*Brooks* v.
*Curtis*, 50 N. Y. 669; *Eno* v. *Del Vecchio*, 4 Duer, 53; *Negus*
v. *Becker*, 143 N. Y. 303; *Clark* v. *N. Y. L. I. & T. Co.*,
64 N. Y. 33; 1 Jones on Real Prop. § 797; *Gubbins* v. *Peter-
son*, 21 App. Div. 241; *Trustees of Columbia College* v.
*Thacher*, 87 N. Y. 311; *N. Y. R. Co.* v. *Rothery*, 107 N.
Y. 310.)

MARTIN, J. So far as the appeal in this case involves the
dismissal of the plaintiff's second cause of action, it is obvious
that the decision of the Special Term was correct and the
General Term properly affirmed it. Indeed, the propriety of
the decision, so far as it relates to that question, is so manifest
that we deem any discussion of it wholly unnecessary.

The only remaining question arises under the contention
of the appellant that the agreement by Agnew to pay a por-
tion of the value of the party wall whenever it should be used
by him or his personal representatives, was a covenant running
with the land. The effect of such an agreement has several
times been passed upon by this court, and unless the rule
which formerly existed in this state has been changed, the
appellant's contention cannot be sustained. Indeed, her
counsel frankly admits that the cases of *Cole* v. *Hughes* (54
N. Y. 444); *Scott* v. *McMillan* (76 N. Y. 141, 144) and *Hart*
v. *Lyon* (90 N. Y. 663) establish a principle adverse to her
claim which, if followed, must result in the defeat of this
appeal.

In the *Cole* case it was held that where an owner of land
builds a party wall under an agreement with an adjoining
owner that, when the latter shall use it, he will pay the
expense of his portion of the wall, the right to compensation
is personal to the builder, and does not pass by a grant of his
land. It was also held that the agreement did not run with
the land of the adjoining owner so as to bind his subsequent
grantees, although the adjoining owner, by the terms of his
agreement, assumed to bind them, and although they pur-
chased with notice of the agreement.

In *Scott* v. *McMillan* this court decided that a covenant to contribute to the construction of a party wall, when he should use it, entered into by an owner of land, for himself, his heirs and assigns, did not run with the land, and was not enforceable against a subsequent grantee, although his deed was by its terms subject to the covenant.

In *Hart* v. *Lyon* the agreement, in all essential particulars, was identical with the agreement in the case at bar. There, as here, it was provided that it should be perpetual, and should at all times be construed as a covenant running with the land. That case cannot be fairly distinguished from this. There, an owner of land built a party wall under an agreement between himself and an adjoining owner, that when the latter should use it he would pay one-half of the value of the wall, and it was held that the right to compensation was personal to the former, and did not pass by a conveyance of his land, although the agreement contained a provision that it should be construed as a covenant running with it. That provision was held to apply only to the covenants to repair and rebuild, and not to the agreement to pay when the wall was used. It was said that the payment of one-half of the value of the wall, when the lot was built upon, would become inoperative when the payment was made, and it could not be perpetual because it spent its force by being fully executed, and that it could not run with the land after being fully performed. No reason is apparent why the same construction should not be given to a like provision in the agreement under consideration.

The principle of those cases is decisive of this question, and leads irresistibly to the conclusion that the judgment must be affirmed, unless the doctrine established by them has been subsequently overruled. The contention of the appellant is that those cases have been overruled by this court. Upon the validity of that contention this appeal must stand or fall.

The appellant relies upon the case of *Mott* v. *Oppenheimer* (135 N. Y. 312) to sustain her claim. An examination of the record in that case discloses that two persons each owned two lots on Fifty-ninth street, in the city of New York. The lots

were numbered 1, 3, 5 and 7. One of the parties owned lots numbered 1 and 7, and the other owned lots 3 and 5. While these lots were unoccupied and wholly unimproved, an agreement was entered into between the parties, which recited that they were desirous of entering into an agreement authorizing either of them, and his respective heirs and assigns, to erect a party wall upon the lines of one or both of the lots adjoining the lots of the other. It then provided that either of the parties might, at any time thereafter, erect upon his lot or lots and the adjoining lot or lots of the other party, party walls, the center line to coincide with the dividing line of the lots upon which they might be erected, and the other party, his heirs and assigns, should have the right to use them by paying to the party who might have erected the walls, his heirs or assigns, one-half their value, when they were used. It also provided that when built they should forever remain party walls, and that the agreement and the covenants therein should apply to and bind the legal representatives of the several parties and should be construed as covenants running with the land. In that case there was no agreement that one should build a party wall, and the other pay when it should be used by him. But the agreement was a general one by which the parties conferred, each upon the other, the authority to erect such wall, and dedicated to that use a portion of each of their lots, with an agreement that if either should build the other might have the right to use it by paying his share of the expense. Thus, it is clear that in that agreement there was no personal covenant by one to pay the other. It was not and could not then be known who would build, or who was to pay when the wall was used. The agreement was wholly prospective, and its purpose was to impose upon the land of each, and not upon either personally, the burden of a future party wall, and to secure to the land and, thus, to its subsequent owners, a corresponding right to the use of the wall by paying one-half of its value. The land and the manner of its prospective use were the primary and only subject and purpose of the agreement. The plain intent of the parties was to bind the land by covenants that

should run with it, and that no personal liability should arise. The evident intention of the parties was to charge upon the land the burden and expense of party walls, and at the same time to confer upon the owner of each of the lots the right to construct them, on condition that any present or future owner of the adjoining lands using them should pay the value of the portion so used. The provisions of the agreement in that case related to the future use of the property, and there was no intention to provide for any present or existing situation. Obviously, the agreement was made with the view that such a contract would be beneficial to the land of both parties and would bind it when the conditions contemplated should subsequently arise. In that case the character of the agreement, its obvious purpose, its prospective provisions, and the situation of the lands when the agreement was made, all concurred in showing an intent that its covenants should run with the land, and clearly justified the court in so holding. But in the other cases to which we have adverted, as well as in the case at bar, the agreement was in effect a personal covenant between the parties. By the contracts in those cases a designated party was authorized to build a party wall, the other agreeing to pay a portion of its value when it should be used by him. There the agreement was a present one, the party who was to build and the one who was to pay were expressly designated, and the covenant to pay was clearly a personal one. Hence, it is plain that the *Mott* case is distinguishable from the cases of *Cole* v. *Hughes, Scott* v. *McMillan* and *Hart* v. *Lyon,* and is not in conflict with the doctrine which has long been established in this state.

Moreover, it is obvious that, when it decided the *Mott* case, this court did not intend to overrule or in any way interfere with the doctrine of the previous cases, as the learned judge who delivered the opinion of the court in that case expressly stated : " If this agreement was the ordinary one between adjoining owners for the erection and use of a party wall on their lands, such as it was in the cases of *Cole* v. *Hughes* (54 N. Y. 444) and *Scott* v. *McMillan* (76 id. 144), I think we

should have to agree with the appellants' argument. * * *
We do not interfere, in the least degree, with the well-settled
doctrine of these cases, if we give to the present contract a
construction which imposed the burden of its covenants upon
the land it concerned." He also distinguished that case from
the case of *Hart* v. *Lyon*. So that from a mere reading of
that opinion it becomes plain that the court did not intend to
"interfere, in the least degree," with the principle established
by the *Cole* and *Scott* cases, nor with the doctrine of the case
of *Hart* v. *Lyon*.

Thus, it is obvious that the appellant's contention that the
agreement between the parties in the case at bar constituted a
covenant running with the land cannot be sustained; that the
judgments of the courts below were right, and that they should
be affirmed.

All concur (GRAY, J., upon ground stated in memorandum
following), except O'BRIEN and BARTLETT, JJ., not voting.

Judgments affirmed.

GRAY, J. I concur with my brother MARTIN in his opinion,
because the contract in this case requires a different construc-
tion from that placed upon the contract in the case of *Mott* v.
*Oppenheimer*. In that case the question was, upon the con-
tract, whether any interest in the land was raised by force of
its covenants and we thought that that was the effect of the
instrument.

It is quite possible for parties so to contract with reference
to a party wall upon their premises as thereby to dedicate the
land to such a purpose. Whether they have done so is a
question to be determined upon a construction of their
expressed intentions, in connection with the covenants of the
instrument.