(139 App. Div. 524.)

MAUPAI v. JACKSON et al.

(Supreme Court, Appellate Division, First ·Department.   July 7, 1910.)

1. VENDOR AND PURCHASER (§ 135*)—INCUMBRANCES—PARTY WALL—PARTY WALL AGREEMENTS.

A party wall and a party wall agreement providing that the expenses of repairing and rebuilding the wall shall be borne by the parties equally, and that the agreement shall be perpetual and shall be construed as a covenant running with the land, constitute an incumbrance justifying a purchaser entitled to a title clear of all incumbrances in rejecting the title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 250–258;  Dec. Dig. § 135.*]

2. PARTY WALLS (§ 9*)—PARTIES.

A mortgagee of land affected by a party wall agreement running with the land is entitled to the rights of the mortgagor created by the party wall agreement, and is a necessary party to an agreement for a cancellation of provisions in the party wall agreement.

[Ed. Note.—For other cases, see Party Walls, Dec. Dig. § 9.*]

3. VENDOR AND PURCHASER (§ 135*)—INCUMBRANCES.

A purchaser in a contract for the sale of a lot, which stipulates that the premises are subject to a party wall agreement, and that the provisions therein that the expenses of repairing and rebuilding the wall shall be borne equally by the parties and shall be a perpetual agreement running with the land, shall be canceled, may insist that the mortgagee of the adjacent land shall consent to the cancellation and may reject the title for the failure of the vendor to procure the mortgagee's consent.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 255–257;  Dec. Dig. § 135.*]

4. PARTY WALLS (§ 9*)—NATURE OF AGREEMENT—COVENANTS RUNNING WITH THE LAND.

A party wall agreement providing for the perpetual maintenance of the wall at mutual expense is a covenant running with the land.

[Ed. Note.—For other cases, see Party Walls, Cent. Dig. § 49;  Dec. Dig. § 9.*]

5. SPECIFIC PERFORMANCE . (§ 100*)—CONTRACTS—ENFORCEMENT.

A contract of sale of a lot required the cancellation of provisions in a party wall agreement affecting the lot.  At the time fixed for the passing of title the purchaser refused the title because the mortgagee of the adjacent lot had not executed the instrument canceling the provisions, and shortly thereafter sued for the deposit on the contract and the expenses incurred in searching the title.  Before the entry of the judgment in his favor a year later, the parties by stipulation called the attention of the court to· the payment of the mortgage shortly before. Prior thereto the purchaser had changed his position so that it would be impossible for him to perform.  *Held*, that the vendor was not entitled to compel performance of the contract, since the purchaser's position had been changed by reason of the fault of the vendor in failing to perform his agreement.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 305;  Dec. Dig. § 100.*] ·

6. PLEADING (§ 433*)—COMPLAINT—SUFFICIENCY—CURE BY VERDICT.

A complaint in an action by a purchaser for the deposit on the contract of purchase and the expenses incurred in searching the title, which

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

merely alleges that the purchaser was ready and willing to perform, is sufficient after verdict as against the objection that it does not allege the purchaser's ability to perform or a valid tender; the parties by stipulation showing that the purchaser made a valid tender.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1451–1477; Dec. Dig. § 433.*]

7. VENDOR AND PURCHASER (§ 351*)—NONPERFORMANCE BY VENDOR—REMEDY OF PURCHASER.

A purchaser in a contract of purchase of real estate may, on the failure of the vendor to perform, recover the expenses incurred in searching the title, and the fact that he employed a title company to search the title did not prevent him from employing an attorney for the same purpose when such employment was not unreasonable in view of the facts.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 351.*]

Appeal from Special Term, New York County.

Action by Ferdinand P. Maupai against George G. Jackson and another. From a judgment of the Special Term (64 Misc. Rep. 407, 118 N. Y. Supp. 513), in favor of plaintiff, defendants appeal. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and MILLER, JJ.

James B. Sheehan, for appellants.
Benjamin F. Feiner, for respondent.

McLAUGHLIN, J. Action by the vendee of a contract for the sale of certain real property to recover a deposit of $25 and the expenses incurred in searching the title. The defendants alleged their ability and willingness to carry out the contract, set forth certain facts as a counterclaim, and demanded judgment that plaintiff be compelled to specifically perform. The issues were tried at Special Term, and the court held that the plaintiff was justified in refusing to take title, directed judgment in his favor for $278.75— the amount deposited at the time the contract was signed and the expenses thereafter incurred in searching the title—and dismissed the counterclaim. The defendants appeal from the judgment.

There is little or no dispute between the parties as to the material facts involved. On the 16th of November, 1907, the defendants, being the owners of the premises in question, contracted to sell the same "free and clear from all incumbrances" to the plaintiff for $53,500, of which $25 was paid at the time the contract was executed. There was then on record a party wall agreement affecting the premises contracted to be conveyed, made in 1870 and recorded the same year, by the then owner and the owner of the premises adjoining on the west. The fourth and fifth clauses of this agreement provided that the expense of repairing or rebuilding the wall should be borne equally and that the agreement should be perpetual and should be construed as a covenant running with the land and bind the heirs, executors, administrators, and assigns of the respective parties. On the 27th of February, 1908, when the parties to this action met

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for closing of the title, a supplemental contract was executed, which modified the original agreement in several respects. By this supplemental contract the plaintiff agreed to take title subject to the aforementioned party wall agreement, provided that the fourth and fifth clauses were "canceled by a proper instrument to that effect" and to pay the purchase price, in addition to the $25 already paid, as follows: $8,500, by executing and delivering, or causing to be executed and delivered, a deed of nine certain lots of land in Hoboken, in the state of New Jersey; $4,600, by delivering, or causing to be delivered, five certain first-mortgage bonds of the Hackensack Water Company; $30,000, by taking the premises subject to a mortgage for that amount held by the Irving Savings Institution; and the balance of $10,375 in cash or certified check on the closing of title, which was set for March 9th, 1908, but was later adjourned, at defendants' request, to March 11th. On the 9th of March, 1908, the defendants and their wives and the owner of the premises adjoining on the west —one Jenny—and his wife executed an instrument purporting to cancel the fourth and fifth clauses, so far as the same are material to the question here under consideration, of the party wall agreement. As already stated the premises were subject to a mortgage of $30,000 held by the Irving Savings Institution. The adjoining premises owned by Jenny were also subject to a mortgage for $22,000 made and recorded in November, 1905, to Susan B. Nelson, Jenny's grantor. Annexed to the cancellation agreement were forms for the consents of these mortgagees to the execution and delivery of the agreement, but which had not been executed by them, and when the parties met for the closing the plaintiff rejected title on the ground, as appears from the stipulation made upon the trial, "that the fourth and fifth clauses of the party wall agreement * * * had not been canceled by a proper instrument to that effect * * * because the mortgagees * * * had not consented to the canceling of the same." The principal question presented by this appeal is whether the plaintiff was justified in rejecting title for this reason.

I am of the opinion that the plaintiff was. There is no direct evidence that the party wall described in the agreement had been erected, but that fact sufficiently appears from various instruments put in evidence. That the existence of this wall, together with a party wall agreement, constituted an incumbrance which justified plaintiff in refusing to take title under the original contract can scarcely be questioned. O'Neil v. Van Tassel, 137 N. Y. 297, 33 N. E. 314; Corn v. Bass, 43 App. Div. 53, 59 N. Y. Supp. 315. The parties themselves seem to have recognized this because the modified or supplemental contract provided that "whereas said contract recites that said premises are to be free and clear of all incumbrances, and it appears * * * that said premises are subject to a party wall agreement * * * it is stipulated and agreed" that plaintiff should take title subject to the agreement, provided the fourth and fifth clauses were canceled by a proper instrument. It seems to me plain that the signatures of the mortgagees were necessary to such an instrument in order to make the title good. Their mortgages covered all the

rights of the owners and the cancellation agreement in which they did not join, of course, did not bind them and would not have prevented a purchaser upon a foreclosure sale from enforcing the original agreement. This may have been immaterial so far as the mortgage upon the premises in question held by the Savings Institution is concerned, since plaintiff had agreed to take the title subject to that mortgage, but I think he was entitled to insist that Jenny's mortgagee, Nelson, should consent to the cancellation.

None of the cases cited by the appellants is directly in point. In Higgins v. Eagleton, 155 N. Y. 466, 50 N. E. 287, the vendee rejected title because of an alleged easement in favor of the adjoining premises for support in the adjacent wall. The vendor was the owner of the adjoining premises, and he offered to execute a release. Upon appeal the claim was made that this release would have been insufficient since the premises were mortgaged and he had not offered to obtain the consent of the mortgagee. The Court of Appeals did not consider whether this would have been a valid objection to the title, holding that it had not been raised on the law day and was one which easily could have been obviated if it had been.

In Volz v. Steiner, 67 App. Div. 504, 73 N. Y. Supp. 1006, the vendee refused title because a wall of the building on the premises encroached some $2\frac{1}{2}$ inches upon the adjoining premises, the adjoining owner having granted the right to maintain the wall so long as it stood, without, however, the consent of his mortgagee to such grant. The court held the objection immaterial, since by reason of the grant and also of section 1499 of the Code of Civil Procedure, there was no one who could either compel the removal of the wall or recover damages, so that the vendee was assured peaceable possession of the wall so long as it stood. It was also intimated that aside from this the objection was a trivial one. But in that case the vendee was obtaining a clear title to the premises bargained for, while in the present case the party wall agreement, so far as it gives the adjoining owner a right to the continuous maintenance of the party wall at mutual expense, creates an easement upon the premises contracted for which is a burden. Moreover, in the present case the plaintiff by his contract was not bound to take title subject to the agreement unless the two clauses were canceled "by a proper instrument to that effect" and his objection that the cancellation agreement, without the signature of Jenny's mortgagee was not such an instrument, cannot, as it seems to me, be said to have been a trivial one.

The court found that the plaintiff rejected title on the sole ground that the forms for the consents of the mortgagees annexed to the cancellation agreement had not been executed and it was urged that these were insufficient to convey or release any rights of the mortgagees. The legal effect of the instruments, however, need not be determined, for when duly acknowledged by the mortgagees it can hardly be questioned that they would have been sufficient to prevent the mortgagees and those claiming through them, from enforcing the canceled clauses. At least, if the plaintiff was willing to accept them as sufficient, it was his risk, and the defendants cannot complain if he

did not insist upon a more formal release from the mortgagees. The refusal to accept the agreement as a proper instrument unless the consents were executed fairly raises the question whether any instrument was necessary from the mortgagees.

The party wall agreement, in so far as it provided for the perpetual maintenance of the wall, at mutual expense, was a covenant running with the land. Of this I do not think there can be any doubt. Hart v. Lyon, 90 N. Y. 663; O'Neil v. Van Tassel, supra; Crawford v. Krollpfeiffer, 195 N. Y. 185, 88 N. E. 29. The defendants cannot consistently claim otherwise in view of the recitals in the supplemental contract and the cancellation agreement and if the agreement was an incumbrance at all, or if any instrument whatever was necessary to cancel the two clauses, then the defendants could not convey a good title. The mortgagees, as well as the owners, were not only proper, but necessary parties to the agreement.

It appears, however, that the Nelson mortgage was paid and canceled on the 18th of March, 1909—before the judgment appealed from was entered—and that the mortgage held by the Savings Institution was paid and canceled in January, 1909. The fact that the Nelson mortgage had been paid and canceled was called to the attention of the trial court by a stipulation of the parties on the 25th of March, 1909—the trial having been finished on the 3d of that month—and it is now claimed that the court should have decreed specific performance since the defendants were then concededly able to convey according to the contract. The trouble with this contention is that they could not convey good title at the conclusion of the trial and by the stipulation referred to it was conceded that the lots in Hoboken, to be conveyed as part of the purchase price, had never been owned by the plaintiff, but were owned by his wife at the time fixed for closing the title and she had thereafter sold them to third parties. It also appeared by the same stipulation that the five first-mortgage bonds of the Hackensack Water Company had been sold by the plaintiff in February, 1909, and that the plaintiff, on the 25th of March, 1909, did not own any of such bonds. It was, therefore, impossible for the plaintiff to specifically perform, and if he could have done so, under all the facts and circumstances, it would have been inequitable to compel him to do so. As we have seen, the day fixed for closing the title was March 11, 1908. The defendants then were unable to give a good title, and this action was begun a few days thereafter. So far as appears, the defendants made no effort whatever to obtain the consents of the mortgagees, but relied solely upon the cancellation agreement. The plaintiff was not bound to hold himself in readiness to perform for an indefinite time thereafter, and there is absolutely no evidence that the Hoboken lots were conveyed, or the Hackensack bonds sold, in bad faith. The fact that the Nelson mortgage was paid over a year after the time fixed for closing the title, and a few days after the trial had been concluded, would not warrant the court in the exercise of its equitable powers, to decree specific performance. The position of the plaintiff had been changed by reason of the fault of the defendants.

It is also claimed that neither plaintiff's ability to perform, nor a

valid tender, was alleged or proved. The complaint alleges simply that the plaintiff was ready and willing to perform, but its insufficiency was not questioned in the court below, where an amendment could easily have been made if necessary; and the stipulation as to what took place at the time fixed for closing the title abundantly sustains the court's finding that the plaintiff did make a valid tender.

It is further claimed that the court erred in allowing certain expenses incurred by the plaintiff in searching the title. It allowed $253.-75—$203.75 paid to a title company for searching the title and $50 for the services of an attorney. The reasonableness of the amounts is not questioned, but it is claimed that having employed a title company to pass upon the title, plaintiff was not justified in paying an additional sum to an attorney. The plaintiff was entitled to recover the expenses reasonably incurred by him, and I do not think it was unreasonable, taking all the facts into consideration, to employ an attorney, and at the same time have the title searched by a title company.

The judgment is right, and is therefore affirmed, with costs. All concur.