HORNE *et al. v.* MACON TELEGRAPH PUBLISHING CO.

1. Where A and B own two adjoining lots as tenants in common, and A conveys his interest in one of the lots to B, and B conveys his interest in the other lot to A, and it is provided in each deed that the grantee and his "heirs and assigns" shall "have the right at any time to build a party-wall between the property hereby conveyed, . . the expense of which shall be borne equally by the owners of the contiguous lots, and which party-wall shall be built equally on the land of the owners of said contiguous lots, and shall be subject to the right of enjoyment equally by them," such agreement constitutes a covenant running with each lot of land.

2. In such a case, where the deeds are duly executed and recorded, this is notice to the subsequent purchasers of what easements or rights the grantor has conveyed, and binds the successors in title of the covenantor to such agreement.

3. On the trial of an action brought by a joint owner of a party-wall, to recover one half of the cost of building such wall from the other joint owner, who was a purchaser from one of the covenantors, it was not error to refuse to allow such purchaser and joint owner to testify that he had no *actual* notice of the agreement in the deed from the other covenantor to the covenantee, where it also appeared on the trial that such agreement was contained in the deeds which had been properly executed and recorded.

4. It was not error, under the facts of this case, to direct a verdict for the plaintiff, and enter up judgment to enforce an equitable lien upon the land for the amount found to be due.

SEPTEMBER 23, 1914.

Complaint. Before Judge Mathews. Bibb superior court. April 29, 1913.

The Macon Telegraph Publishing Company brought suit against Edward A. Horne, Alfred R. Willingham, and Jesse H. Hall, and alleged substantially the following: Edward A. Horne and Amelia Horne were owners, as tenants in common, of certain land in the City of Macon, composed of two parcels, which they divided by each one making to the other a quitclaim deed to the grantor's interest in the other's half, on May 27, 1892. (The material facts relating to these deeds are stated in the opinion, infra.) Afterwards the Macon Telegraph Publishing Company became the owner

by purchase from Amelia Horne of her lot, "together with all the rights, members, and appurtenances thereunto in any way appertaining or belonging," and continued to own the same to the present time. In the years 1910 and 1911 the plaintiff built a party-wall between its land and the parcel of land a half interest in which Amelia Horne had conveyed to Edward A. Horne. The wall was built equally upon the two parcels. Before the building was commenced the plaintiff invited and requested Edward A. Horne to confer and co-operate with it in planning and building the wall, and offered to regard his wishes as to the kind of wall to be built and plans for the manner of building; but Horne declined and refused to treat with the plaintiff in any manner concerning the building of the wall. The wall was properly built, of such material and in such manner as to be reasonably suited to the uses of the owners of the contiguous lots, and so as to be subject to the rights of enjoyment equally to them. After the building of the wall was begun, and before it was completed, Alfred R. Willingham became the owner by purchase from E. A. Horne of the Horne lot of land; and again before its completion Jesse H. Hall became the owner by purchase from Alfred R. Willingham of that lot. Since the wall was built it has been and still is used as a support for, and as a part of, the building on the tract of land described. The reasonable expense of building the wall was $2,275, all of which the plaintiff paid in full. It prayed to recover of the defendants jointly and severally $1,137.50, with interest; and to have a decree declaring the sum due to be a charge and lien upon the land owned by the defendants; and that the land be sold in satisfaction of the sum found to be due.

A. R. Willingham and J. H. Hall filed their demurrers, general and special, which (the plaintiff having amended his petition) were overruled; and they filed exceptions pendente lite. By their answer they denied the material allegations of the petition. Horne filed no answer. After the submission of the testimony the court directed the jury to render a verdict for the plaintiff against E. A. Horne personally, and against the property specially, for the amount claimed, with interest, and decreed that the plaintiff have a charge and lien for the amount of the recovery upon the land conveyed by Horne to Willingham and by Willingham to Hall. Willingham and Hall excepted.

*John P. Ross, J. E. Hall,* and *Wallace Miller,* for plaintiffs in error. *John R. L. Smith,* contra.

Hill, J. The question to be decided is, does the party-wall agreement contained in the deeds of E. A. Horne and Amelia Horne, each to the other, constitute a covenant running with the land? The agreement in the deed dated May 27, 1892, from Amelia Horne to E. A. Horne, is as follows: "It is expressly agreed that the said E. A. Horne, his heirs and assigns, shall have the right at any time to build a party-wall between the property hereby conveyed to him and the property of the said Amelia Horne, the expenses of which shall be borne equally by the owners of the contiguous lots, and which party-wall shall be built equally on the land of the owners of said contiguous lots, and shall be subject to the right of enjoyment equally by them. A plat of the land hereby conveyed is attached to this deed and made a part thereof." At the same time E. A. Horne executed a deed to Amelia Horne, in which the agreement was set out as follows: "It is hereby expressly agreed that the said Amelia Horne, her heirs and assigns, shall have the right at any time to build a party-wall between the property hereby conveyed to her and the property of the said E. A. Horne, the expenses of which shall be borne equally by the owners of said two contiguous lots, and which party-wall shall be built equally on the land of the owners of said contiguous lots, and shall be subject to the right of enjoyment equally by them. A plat of the land hereby conveyed is attached to this deed and made a part thereof." Both of these deeds were duly executed, and were recorded on June 18, 1892. Afterwards, on May 11, 1911, Amelia Horne executed a warranty deed to her lot of land to the Macon Telegraph Publishing Company, a bond for title, which was recorded, having previously been executed on November 14, 1910. On February 3, 1911, E. A. Horne executed a deed, which was duly recorded, to his lot of land to A. R. Willingham, "together with an easement in the division-wall." On March 4, 1911, A. R. Willingham conveyed by deed, which was duly recorded, the E. A. Horne lot to Jesse H. Hall, "together with an easement in the division-wall." W. T. Anderson testified on the trial that he was the general manager of the Macon Telegraph Publishing Company, which erected a building in the fall of 1910 and spring of 1911 on the lot which it bought from Miss Amelia Horne. The wall between the two lots

was commenced on December 2, 1910, and finished some time after June 1, 1911. E. A. Horne was asked to participate in the building of the wall, but refused to do so, or to pay any portion of the expense, and before the completion of the wall sold his lot to Willingham, and Willingham sold to Hall. No part of the expense of building the wall has been paid by Horne, Willingham, or Hall. The total expense of building the wall was $2,450, according to the testimony of the contractor. There was evidence tending to show that Horne, Willingham, and Hall used the party-wall before it was completed.

It is insisted that even if the party-wall agreement constitutes a covenant running with the land, it only binds him who owns the lot contiguous to the builder at *the time the wall is actually built;* and, in the absence of an express contract to pay upon use of the wall, that such an agreement would not be a charge or lien upon the land in the possession and ownership of a subsequent assignee. Whatever the decisions of the courts of other jurisdictions may be on this question (and they are conflicting), such is not the law in this State. By the Civil Code (1910), § 4192, it is provided that "The purchaser of lands obtains with the title, however conveyed to him, at public or private sale, all the rights which any former owner of the land, under whom he claims, may have had by virtue of any covenants of warranty of title, or of quiet enjoyment, or of freedom from incumbrances, contained in the conveyance from any former grantor, unless the transmission of such covenants with the land is expressly negatived in the covenant itself." A covenant which runs with the land relates directly to the land and follows it into the hands of assignees. *Howard Mfg. Co.* v. *Water Lot Co.,* 53 *Ga.* 689. Even a parol agreement in relation to the building of a party-wall, if fully executed by the parties to the agreement, creates an easement which attaches to and runs with the land. *Rawson* v. *Bell,* 46 *Ga.* 19. In *Taylor* v. *Dyches,* 69 *Ga.* 455, 459, it is said, by Judge Crawford: "Where a grantor owns a lot and sells a part of it, reserving an alley-way for the common use of the part conveyed and the part reserved, and subsequently conveys the remainder not passed by the first deed, the right of common of easement in the way passes to the grantee in the second deed as appurtenant thereto." In *Georgia Southern Railroad* v. *Reeves,* 64 *Ga.* 492, it was held: "Where the grantor, in consideration of $25.00,

and of the building of the railroad, conveyed to a company, its successors or assigns forever, in fee simple, the right of way through his land, and added in the deed the following words: 'It is hereby agreed and understood a depot and station is to be located and given to said Osborne Reeves, on the land or strip above conveyed, to be permanently located for the benefit of said Osborne Reeves and his assigns, and to be used for the general purposes of the railroad company,' the grantee, by accepting such deed, entered into a covenant to comply with its terms, and this covenant ran with the land and became obligatory upon any second company which became the purchaser, under proper legal direction, of all the rights, privileges, franchises, and property of the former." In 1 Jones on the Law of Real Property in Conveyancing, § 799, it is said: "Thus, an agreement under seal between adjoining lot-owners, for themselves, their heirs and assigns, acknowledged and recorded, and providing that either party may build a party-wall, one half on the land of each, and that whenever the other party uses the wall so built he or she shall pay one half the cost of its erection, is a covenant running with each lot. Such an agreement creates an agreement of use and support in favor of each lot-owner and his successors in title in the half of the wall which stood on the other lot, and in the land under the same. Each lot of land becomes entitled, therefore, to the benefits and subject to the burdens arising from the covenants contained in the agreement, and relating to the erection and maintenance of the wall. They inhere in and belong to it. . . The burden as well as the benefit of the covenant passes with the land. The grantee of the covenantor is personally liable on such covenant running with the land, if he is the first to use the wall. A grantee not using the wall is not liable to a personal judgment on the covenant, but this creates an equitable lien or charge upon the land, and the only remedy, aside from the personal liability of the party using the wall, is a judgment to enforce such lien." The deeds from Amelia Horne to E. A. Horne, and from E. A. Horne to Amelia Horne, conveyed the land to the grantees, their "heirs and assigns," with the right to build a party-wall, and the expense was to be equally borne by the owners of the contiguous lots. Both deeds were duly recorded, and were constructive notice to subsequent purchasers of what easements or rights the grantors had conveyed, and bound the successors in title of the covenantors. *A., K.*

*& N. Ry. Co.* v. *McKinney,* 124 *Ga.* 929 (53 S. E. 701, 6 L. R. A. (N. S.) 436, 110 Am. St. R. 215). See First National Bank *v.* Security Bank, 61 Minn. 25 (63 N. W. 264); Maupai *v.* Jackson, 139 App. Div. 524 (124 N. Y. Supp. 220); 1 Jones, Real Property, § 799; King *v.* Wright, 155 Mass. 444 (29 N. E. 644).

The case of Crawford *v.* Krollpfeiffer, 195 N. Y. 185 (88 N. E. 29, 133 Am. St. R. 783), is relied on, among others, by the plaintiffs in error; but most, if not all, of the cases thus cited are distinguishable from the present. While the decision in the Crawford case seems to support the contention of the plaintiffs in error, the rule is therein correctly quoted and stated by Gray, J., as follows: "'Where the agreement does not contemplate the present construction of a party-wall, but authorizes its construction by either party in the future, the rule is different, and the covenant is said to create a privity of estate and to run with the land.' We think that this distinction is one which has been established by our decisions, and that a rule of property has thereby been created, which should not be departed from;" citing Mott *v.* Oppenheimer, 135 N. Y. 312 (31 N. E. 1097, 17 L. R. A. 409), and Sebald *v.* Mulholland, 155 N. Y. 455 (50 N. E. 260).

It is argued that the defendants Willingham and Hall were bona fide purchasers for value, without notice of the party-wall agreement; and that no duty rested on them to make an examination of the title to the adjoining lot owned by the plaintiff in this case. Both the deed from Amelia Hòrne to E. A. Horne, the predecessor in title of the defendants, and the deed from E. A. Horne to Amelia Horne, the predecessor in title of the plaintiff, show that the same agreement was contained in both deeds, which were duly executed and recorded. But it is insisted that the deed from Amelia Horne to E. A. Horne did not disclose that the party-wall agreement contained therein appeared also in the deed from E. A. Horne to Amelia Horne. It is sufficient to say that the deed was properly executed and recorded, and was notice to the world of whatever agreements and covenants it contained; and it recited, besides the money consideration moving from Amelia Horne, that she "quitclaims to him all of her interest in that part of lot six" (which adjoins the property of the defendants); and the deeds were recorded in the same book, the one immediately succeeding the other. The deed from Horne to Willingham conveyed an interest in the

party-wall in these words: "together with an easement in the division-wall." There is evidence tending to show that E. A. Horne owned the adjoining lot when the building of the party-wall was commenced, and that Willingham and Hall bought the lot that Horne then owned before the completion of the wall. It is hardly conceivable that under all these circumstances a purchaser of the property would not thereby be put upon notice as to the ownership of the division-wall and the agreements connected therewith. We can not agree to the proposition that Willingham and Hall had no notice of the party-wall agreement, but hold that they did have. It follows that the court did not err, on the trial, in refusing to allow the defendant Willingham, over objection, to answer the question, "What knowledge did you have of the recital in the deed from E. A. Horne to Amelia Horne?" The court did not err in overruling the demurrer to the petition as amended, nor in directing a verdict for the plaintiff and entering a decree to enforce an equitable lien upon the land for the amount found to be due. There was no merit in the contention that the defendant Horne made use of only a part of the party-wall built by the plaintiff, and that in any event the plaintiff would not be entitled to recover from the defendant Horne an amount in excess of one half of the cost of the wall actually used. It may be added, moreover, that Horne did not except to the judgment of the court below, and is not a party to this case, although it sounds in his name as one of the plaintiffs in error. On the question of the proper registration of a party-wall agreement contained in a deed being constructive notice to and binding on all purchasers of the real estate affected by the agreement, see the following authorities: Loyal Mystic Legion v. Jones, 73 Neb. 342 (102 N. W. 621); First Nat. Bank v. Security Bank, 61 Minn. 25 (63 N. W. 264); Parsons v. B. & L. Asso., 44 W. Va. 335 (29 S. E. 999, 67 Am. St. R. 769); Conduitt v. Ross, 102 Ind. 166 (26 N. E. 198); Ferguson v. Worrall, 125 Ky. 618 (101 S. W. 966, 9 L. R. A. (N. S.) 1261). *Judgment affirmed. All the Justices concur.*

LUMPKIN, J., concurring specially. I concur in the judgment in this case, but do not concur in all that is said in the discussion of it. The covenant contained in the deed from Amelia Horne to E. A. Horne (the deed from E. A. Horne to Amelia containing a like covenant) was undoubtedly a covenant running with the land. As there was evidence indicating that the construction of the wall

was begun during the ownership of E. A. Horne and continued after the conveyance by him to Willingham and by Willingham to Hall, being completed after the conveyance to Hall, under the terms of the deeds, possibly the direction of a verdict against Horne, finding a personal liability against him for one half the cost of the wall, may have been questionable; but Horne is not complaining. Relatively to Willingham and Hall no personal liability was declared, and the only verdict and judgment entered was the finding of an equitable lien on the lot. As to them, especially as to Hall, the direction of the verdict in this form, if erroneous, was harmless error, as it certainly found no more as to him than the plaintiff was entitled to recover. On the general subject see *Willcox* v. *Kehoe*, 124 *Ga.* 484 (52 S. E. 896, 4 L. R. A. (N. S.) 466, 4 Ann. Cas. 437), and cases cited; and 1 Jones on the Law of Real Property in Conveyancing, § 799.

FISH, C. J., and BECK, J., join in the special concurrence.

ATKINSON, J., concurs in the judgment.