FRANK WILKLOW, Respondent, v. VIRGINIA M. BENNETT, Appellant.

Third Department, November 20, 1929.

*DeWitt W. Os rander*, for the appellant.

*A. D. & A. W. Lent* [*A. W. Lent* of counsel], for the respondent.

HASBROUCK, J. This action is brought to recover the expense of repairing a fence on the northerly side of a right-of-way next to plaintiff's lands.

The " Pancake Hollow " road in the town of Lloyd, Ulster county, runs north and south. Where plaintiff bounds it on the west runs the right-of-way westwardly through the lands now or formerly of Wilklow and Dayton.

Prior to 1885 there were across this right-of-way four gates; one at the " Pancake Hollow " road, one on either side of the Dayton property and one at the easterly limit of the Connelly property.

The westerly gate on the Dayton property was moved further west by Luther Wilklow and later it was taken down. It is claimed that it was removed as the result of an agreement between Luther Wilklow and George Bennett, the husband of the defendant, that the defendant would build a fence along a portion of the right-of-way west of the Dayton land.

The complaint sets up an agreement between the plaintiff and his predecessors in interest and the defendant and her predecessors in interest on the part of the latter to erect such fence, and on the part of the former to remove gates from the right-of-way.

The complaint is so framed as to permit the plaintiff to stand either upon a written, parol or implied contract. The plaintiff

has put in evidence a written contract and has offered evidence tending to prove an express contract by parol, and has introduced evidence tending to prove an implied contract by the acts of the defendant.

The first question is, did the written contract bind Robert Connelly to build a fence at the north of the right-of-way between Dayton's property and his own? The writing recited and provided: On the " roadway there is a gate thereon, belonging to said Elijah Wilklow * * * over which * * * disputes * * * have arisen * * * in regard to keeping the same shut, * * * Now in consideration that * * * Elijah Wilklow removes from said roadway the gate * * * the said parties of the first part [Connelly and Dayton] * * * agree to * * * erect a fence and keep the same in repair along said roadway on the north of the beaten track one foot Northerly of the ditch on the north of said roadway where the same passes through the lands of said Wilklow."

The contract further provided that Dayton would erect a fence north of the right-of-way on his premises and that he would not obstruct it by gate on said roadway. The writing contains no separate agreement on the part of Connelly as to building a fence.

What was done was that Connelly and Dayton built a fence north of the ditch and along the same to Dayton's line and Elijah took down the gate. No change in Dayton's gates was made until after Elijah had died and his son Luther had inherited the lands lying on the west of Dayton. Certain it is that Connelly and Dayton built no fence west of Dayton and north of the right-of-way during Elijah's life. If an obligation to build such fence rests under the written contract upon any of the parties it rests upon the grantees and devisees of Dayton as well as of Connelly. The agreement specifically says Dayton shall build a fence north of the right-of-way on his property. Why should not Connelly participate in that expense with Dayton? If not benefited by it neither was he benefited by the construction of a fence north of the right-of-way between him and Dayton. The taking away of Elijah's gates was the only benefit he received. Again, why does not the agreement provide specifically as it did to Dayton that Connelly should build a fence west of Dayton? The agreement did not contemplate that Dayton should build or participate in building any more fence than he built. If it did not contemplate his participation in the building of a fence west of his property it did not contemplate Connelly's doing so. What was done by the parties during the eleven years following 1885 supports the construction of the written contract contended for by the defendant rather than

contended for by the plaintiff. (*City of New York* v. *New York City R. Co.*, 193 N. Y. 548; *Carthage T. P. Mills* v. *Village of Carthage*, 200 id. 1, 14.)

It seems to me the trial court erred in submitting to the jury any question of damages under the written contract.

Now as to any express, parol or any implied agreement. None is attempted to be shown in the case between the plaintiff and the defendant. What was attempted to be shown was a parol contract entered into between Luther Wilklow and the defendant in 1896. Such a contract if proven would have been of no avail to the plaintiff. It did not run with the land. (*Parmelee* v. *Dann*, 23 Barb. 461; *Talmadge* v. *Rensselaer & Saratoga R. R. Co.*, 13 id. 493; *Storms* v. *Snyder*, 10 Johns. 109; *Guilfoos* v. *N. Y. C. & H. R. R. R. Co.*, 69 Hun, 593; *Sebald* v. *Mulholland*, 155 N. Y. 464; *Schwenker* v. *Picken*, 91 App. Div. 367.) At best, it reflected merely a personal relationship. (*Bland* v. *Umstead*, 23 Penn. St. 316.)

There is no pretense if such an agreement existed that it was assigned to the plaintiff or that plaintiff owned it.

The judgment of the County Court should be reversed and the complaint dismissed, with costs in that court and in this court.

VAN KIRK, P. J., DAVIS, WHITMYER and HILL, JJ., concur.

Judgment reversed on the law, with costs, and complaint dismissed, with costs.