■ MICHAEL FRANCESA et al., Respondents, v JOSEPH SCIBETTA et al., Appellants. [855 NYS2d 221]—

In an action, inter alia, to recover a down payment given pursuant to a contract for the sale of real property, the defendants appeal from (1) an order of the Supreme Court, Nassau County (Martin, J.), entered December 6, 2006, which granted the plaintiffs' motion for summary judgment on the complaint and denied their cross motion for summary judgment dismissing the complaint and on their counterclaim for retention of the down payment, (2) a judgment of the same court entered May 8, 2007, which, upon the order entered December 6, 2006, is in favor of the plaintiffs and against them in the principal sum of $133,135, and (3) an order of the same court entered May 8, 2007, which directed the Treasurer of the County of Nassau to release to the plaintiffs the sum of $132,500 plus accrued interest, representing the sums paid into court by the defendants' counsel pursuant to court order.

Ordered that the appeals from the orders are dismissed, without costs or disbursements; and it is further,

Ordered that the judgment is reversed, on the law, without costs or disbursements, the plaintiffs' motion for summary judgment on the complaint is denied, the order entered December 6, 2006 is modified accordingly, and the order entered May 8, 2007 is vacated.

The appeal from the intermediate order entered December 6, 2006 must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (see Matter of Aho, 39 NY2d 241, 248 [1976]). The issues raised on appeal from the order entered December 6, 2006 are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501 [a] [1]).

The appeal from the order entered May 8, 2007 must be dismissed in light of our determination vacating that order on the appeal from the judgment.

The plaintiffs (hereinafter the purchasers) entered into a contract of sale dated May 11, 2005 (hereinafter the contract), with the defendants (hereinafter the sellers) to purchase certain real property located in Plandome Manor (hereinafter the subject property). The sellers had the right, pursuant to paragraph 21 of the contract, inter alia, to take such action as they deemed advisable to remove or remedy any encumbrances or other objections to title made by the purchasers, other than those encumbrances which the purchasers were obligated to accept pursuant to the contract. The sellers also had the right to adjourn the closing for a period or periods not exceeding 60 days. The sellers made their election, pursuant to paragraph 21, to remedy an out-of-possession title exception, arising from the location of certain fences and a retaining wall on the subject property and on an adjacent property owned by a third party (hereinafter the neighbors) which were not located within the record boundary lines of the respective properties. The sellers further elected to adjourn the closing in order to remedy the defect in title in accordance with the contract. After considerable negotiation with the purchasers and the neighbors with respect to remedying this exception, the sellers and the neighbors entered into an agreement that, inter alia, permitted the sellers to relocate the fences and the retaining wall to the record boundary lines (hereinafter the fence agreement). The fence agreement also governed the allocation of future maintenance and repair obligations, and the expenses associated therewith, pertaining to the fences and the retaining wall. Specifically, the fence agreement required the neighbors, the sellers, and their respective successors to repair and maintain, at their own expense, that which was relocated onto their respective properties.

Contrary to the purchasers' contention, the fence agreement did not constitute an encumbrance rendering title to the subject property unmarketable (see Regan v Lanze, 40 NY2d 475, 481-482 [1976]; Dyker Meadow Land & Improvement Co. v Cook, 159 NY 6, 15 [1899]; cf. Maupai v Jackson, 139 App Div 524 [1910]). The fence agreement was unambiguous and, contrary to the purchasers' contentions, as set forth in their post-closing written demand for a return of the down payment, did not impose "the duty and cost to relocate, maintain and repair the fences and stone retaining wall encroaching on the Sellers' property" upon the sellers and their successors. In the first instance, the prior encroachments of the fences and the retaining wall were remedied by the sellers' relocation of those structures prior to the closing. Moreover, contrary to the position advanced by the purchasers on this appeal, the fence agreement did not preclude the sellers and their successors from removing or relocating the fence on the subject property without the neighbors' consent.

Thus, the Supreme Court erred in granting the purchasers' motion for summary judgment on the complaint, which was premised solely on the ground that the fence agreement rendered title to the subject property unmarketable, since the purchasers failed to make the necessary prima facie showing of entitlement to judgment as a matter of law in connection with this issue (see Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Zuckerman v City of New York, 49 NY2d 557 [1980]), regardless of the sufficiency of the sellers' opposing papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]).

On their cross motion, the sellers failed to meet their burden by proffering sufficient evidentiary proof. Thus, the sellers' cross motion for summary judgment dismissing the complaint was properly denied regardless of the sufficiency of the purchasers' opposing papers (id. at 853).

We do not concur with our dissenting colleague's view that the sellers "imposed a new burden on title that the purchasers had not agreed to assume," nor with his conclusion that the "sellers were unable to tender title as required by the contract."

Accordingly, the order directing the Treasurer of the County of Nassau to release to the purchasers the sum of $132,500, representing the down payment, must be vacated. Rivera, J.P., Carni and McCarthy, JJ., concur.

Spolzino, J. (concurring in part and dissenting in part and voting to dismiss the appeal from the order entered December 6, 2006, and to affirm the judgment and the order entered May 8, 2007, with the following memorandum): I disagree with the

majority. In my view, when the sellers agreed that they and all subsequent owners of the property would be obligated to "maintain," "repair," and "replace" the new chain-link fence to be constructed on the property, they imposed a new burden on title that the purchasers had not agreed to assume. As a result, the sellers were unable to tender title as required by the contract, and the purchasers were entitled to the return of their down payment. Accordingly, I would affirm the judgment of the Supreme Court and the order directing the Treasurer of the County of Nassau to return the down payment to the purchasers. Therefore I dissent, respectfully.

The contract of sale, which was dated May 11, 2005, required the sellers to convey "fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated." The contract made no reference to any obligation with respect to a fence. After the contract of sale was executed and a title search had been conducted, the parties became aware that certain fences located on the sellers' property and the property adjacent to it were not within the proper boundary lines. In an attempt to cure this defect in title, the sellers entered into an agreement with their neighbors, dated September 19, 2005 (hereinafter the fence agreement), which, among other things, provided for the construction of a new chain-link fence on the sellers' property. The agreement further provided that "[a]fter erection, the new chain link fence . . . shall thereafter be maintained in good condition by [the seller] Scibetta or Scibetta's successor in title and any required repair or replacement shall be the sole expense of Scibetta or Scibetta's successor in title."

As I see it, the fence agreement imposed a new obligation on the present and future owners of the subject property. My analysis is simple. Prior to entering into the fence agreement, the sellers and their successors were under no obligation to have a fence on their property or to maintain, repair, or replace any fence. Thereafter, the sellers and their successors were under such an obligation.

The sellers' argument that the fence agreement imposed no new obligation upon them because the purchasers could remove the fence if they wished ignores, in my view, the specific terms of the agreement. "A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms" (*W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]; *see Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004]; *Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]; *Costello v Casale*, 281

AD2d 581, 583 [2001]). The fence agreement at issue here defined the property owner's obligation as being one to "maintain" the fence. To "maintain" means "to keep in a state of repair, efficiency or validity: [to] preserve from failure or decline" (Webster's Third New International Dictionary 1362 [2002]). One cannot "keep" a fence "in a state of repair" or "preserve" the fence "from failure or decline" by removing it.

Moreover, even if in this context it is arguable that the obligation to "maintain" nevertheless permits the removal of the fence, the purchasers were not obligated to assume the risk of losing any potential litigation arising from their removal of the fence. A purchaser is entitled to " 'a title that will enable him to hold his land free from probable claim by another' " and " 'ought not to be compelled to take property, the possession or title of which he may be obliged to defend by litigation' " (*Voorheesville Rod & Gun Club v Tompkins Co.* 82 NY2d 564, 571 [1993], quoting *Dyker Meadow Land & Improvement Co. v Cook*, 159 NY 6, 15 [1899]; *see Barrera v Chambers*, 38 AD3d 699, 700 [2007]). Since the fence agreement, at a minimum, subjects the sellers and their successors to the possibility that their neighbor will seek to compel the continued existence of the fence, it cannot be said that title is not subject to a "probable claim by another."

The sellers' reliance upon the letter executed by the adjoining property owners on May 3, 2006, purporting to modify the fence agreement by permitting the fence to be removed, does not alter this conclusion. The terms of the contract of sale entitled the purchasers to cancel the contract if the sellers did not cure the title defect within the 60-day adjournment period. The contract of sale was executed on May 11, 2005. The purchasers exercised their right to cancel on September 26, 2005 and thus prior to the sellers' tender of the deed on September 30, 2005. The letter modifying the fence agreement was not signed until May 3, 2006. Thus, since the modification curing the defect occurred well in excess of the 60-day period provided for in the contract of sale, the clear terms of that contract entitled the purchasers to cancel it and demand the return of their down payment (*see Salamone v Kaba Realty, LLC*, 46 AD3d 659 [2007]).

The sellers' argument that the obligation imposed by the fence agreement is immaterial because it required them or their successors to do nothing more in terms of caring for the fence than they were required to do under the Code of the Village of Plandome Manor (hereinafter the Village Code) is, in my view, similarly without merit. Although section 88.1 (D) of the Village Code requires that fences "be maintained in a sound structural

condition and in good repair," and section 124.3 (H) of the Village Code requires that "fences and walls are to be maintained in a safe and structurally sound condition," neither code section brought about the existence of the fence that is the subject of this litigation, nor would either code section compel the purchasers to keep it. The fence agreement, by contrast, "created" the fence and then required the owner of the subject real property to maintain, repair, and replace it. In addition, unless the Village Code can be read as having created a private right of action, which is unlikely (*see Pelaez v Seide*, 2 NY3d 186, 200 [2004]; *Bhandari v Isis*, 45 AD3d 619 [2007]), the fence agreement makes the property owner directly answerable to his or her neighbor, which would not have been the case without the fence agreement. The obligations imposed by the fence agreement are thus in addition to a property owner's obligations under the Village Code.

The imposition of an additional obligation, not excepted in the contract of sale, entitles the purchasers to cancel the contract and to reimbursement of the down payment (*see O'Neil v Van Tassel*, 137 NY 297 [1893]; *Maupai v Jackson*, 139 App Div 524 [1910]; *Corn v Bass*, 43 App Div 53 [1899]; *cf. Greenfarb v R. S. K. Realty Corp.*, 256 NY 130 [1931]). Since the contract at issue here did not provide that the purchasers would take title subject to the obligation to maintain and repair the fence, the sellers were unable to convey title to the purchasers in accordance with the contract provisions on the final day set for the closing, and the purchasers were thus entitled to the return of their down payment (*see Calverton Assoc. v Kempermann*, 262 AD2d 262 [1999]; *Gargano v Rubin*, 200 AD2d 554, 555-556 [1994]; *Meadows v Michel*, 144 App Div 927 [1911]).

In my view, therefore, the Supreme Court correctly concluded that the purchasers were entitled to summary judgment on the complaint (*see Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]) and properly directed the Treasurer of the County of Nassau to release the down payment to them.