## WILLCOX *et al.* v. KEHOE.

1. A covenant in a lease, whereby the lessor expressly stipulates that he will not be bound to make repairs, alterations, additions, or improvements upon the leased premises, but agrees that the lessee, at his option, may make such repairs, etc., as shall be necessary, and that he will reimburse him therefor to an amount named, is a personal obligation on the part of the original lessor, and does not run with the reversion so as to bind an assignee thereof.

2. One who buys land subject to a lease containing a covenant of the character indicated in the preceding note is not bound for the breach of the purely personal covenant of his predecessor, made prior to the sale of the land to him.

Argued November 16,—Decided December 21, 1905.  Rehearing denied January 12, 1906.

Complaint.  Before Judge Norwood.  City court of Savannah. August 18, 1905.

*R. R. Richards* and *Peeples & Jordan,* for plaintiffs in error.
*O'Connor, O'Byrne & Hartridge,* contra.

CANDLER, J. The Domestic Coal and Wood Company, a firm composed of Willcox and Salas, leased from Harriet C. Jones and others a wharf lot in the city of Savannah for the term of three years and four months, the date of the lease being May 29, 1901. The plaintiffs in error are a partnership doing business under the name of the Standard Fuel Supply Company, and are successors in business to the Domestic Coal and Wood Company. One of the conditions of the lease referred to was as follows: "It is covenanted and agreed by and between the parties of these presents, that the said [lessees] shall take and occupy the said property as it stands at the beginning of this lease, and that the said [lessors] shall not be called upon or be responsible for any additions, alterations, improvements, or repairs upon the said leased property, or any part thereof, or for any dredging or increased depth of the water along said wharf front, and that all such additions, improvements, repairs, or dredging shall be made by the [lessees] at their option and at their own expense. But said [lessors] hereby covenant and agree to reimburse and to pay to the said [lessees] for any necessary repairs, improvements, or dredging made or done by them a sum not to exceed in the aggregate during the term of said lease twelve hundred dollars ($1,200), to be paid to said [lessees] at the time or times when said repairs or dredging is completed and payment for the same becomes due." The instrument contained various other covenants which are not material to this discussion. Only one of the covenants of the lease is expressly made applicable to the successors or assigns of either party, viz., a stipulation that in the event of default in the payment of rent the lessors, "their successors or assigns," shall have the right to re-enter and terminate the lease. During the years 1901 and 1902, the original lessees and their successors, the plaintiffs in error, expended for necessary repairs on the leased premises a sum in excess of the $1,200 provided by the clause of the contract which has been quoted. Of this amount $802.30 was reimbursed to the original lessees, presumably at the time the repairs were made. The remainder, $397.70, has never been reimbursed, though demand for same has been made. In April, 1905, Kehoe, the defendant in error, purchased the wharf lot, and, after

the expiration of the lease, brought suit against the lessees for an amount alleged to be due for three months' rent of the premises. The defendants filed a plea in which they sought to recoup against the plaintiff's claim for rent the difference of $397.70 between the amount that has been paid to them and their predecessors by way of reimbursement for repairs made, and the amount of $1,200 provided for by the covenant to reimburse, which has already been set out. On motion of counsel for the plaintiff the plea of recoupment was stricken as insufficient in law, and the defendants excepted. It will be seen that two controlling questions are presented for decision, viz.: was the covenant to reimburse one which ran with the land, or a merely personal obligation on the part of the original lessors; and if it was not a covenant running with the land, was Kehoe, who bought subject to the lease, bound by its terms to the extent that he will be held liable for the previous breach of the covenant by his predecessor in title?

1. At common law a distinction was drawn between the land, i. e., the right to the possession of leased premises, and the reversion, or the right to the estate after the expiration of the lease; and it seems that "covenants ran with the land, but not with the reversion. Therefore the assignee of the lessee was held to be liable in covenant and to be entitled to bring covenant, but the assignee of the lessor was not." See note to Spencer's case, 5 Rep. 16, 1 Smith's L. C. (9th Am. ed.) 180, citing Thursby *v.* Plant, 1 Wms. Saund. 300, n. 10, and Butler *v.* Archer, 12 Irish C. L. 104. To remedy this inequality the statute of 32 Henry VIII, c. 34, was passed, whereby it was enacted, in effect, that assignees of lessors should "have like advantages against the lessees, their executors, administrators, and assigns, by entry, for non-payment of the rent, or for doing waste or other forfeiture, and by action only, for not performing other conditions, covenants, or agreements, expressed in the indentures of leases, . . as the said lessors and grantors, their heirs or successors, might have had;" and that "all lessees and grantees of lands, . . their executors, administrators, or assigns, shall have like action and remedy against all persons and bodies politic, their heirs, successors, and assigns, having any gift or grant of the king, or of any other persons of the reversion of the said land and hereditaments so letten, or any parcel thereof, for any condition or covenant expressed in the indentures of their leases, as the same lessees

might have had against the said lessors and grantors, their heirs
or successors." From the sweeping language of this statute, it
would seem that Parliament intended that all covenants in leases
should run both with the land and the reversion, or, in other words,
that assignees of both lessor and lessee should be entitled to all the
benefits and subject to all the burdens of covenants contained in the
lease. But in Spencer's case, 5 Rep. 16, 1 Smith, L. C. (9th Am.
ed.) 174, two important limitations were placed upon covenants run-
ning with the land. Quoting from the language used in that case,
they were: (1) "When the covenant extends to a thing in esse,
parcel of the demise, the thing to be done by force of the covenant is
quodammodo annexed and appurtenant to the thing demised, and
shall go with the land, and shall bind the assignee although he be
not bound by express words; but when the covenant extends to a
thing which is not in being at the time of the demise made, it can
not be appurtenant or annexed to the thing which hath no being,"
and in order for the assignee to be bound he must be expressly
named in the covenant; and (2) "But although the covenant be for
him and his assigns, yet if the thing to be done be merely *collateral
to the land,* and doth not touch or concern the thing demised in any
sort, there the assignee shall not be charged." The first of these
rules was, in the subsequent English case of Minshull *v.* Oakes,
2 H. & N. 793, attacked as unreasonable, and the opinion was ex-
pressed that Spencer's case decided contrary to the rule (note to
Spencer's case, 1 Smith's L. C. 186) ; but it has nevertheless been
followed generally by the courts both of England and the United
States. In the opinion of the writer, the second rule quoted was in-
tended merely to protect the assignee of the lease or of the reversion
against whimsical or unreasonable covenants in leases; but it has
been given a much more restricted application; and accordingly this
court has held that "to constitute a covenant running with the land,
the covenant 'must have relation to the interest or estate granted,
and the act to be done must concern the interest created or con-
veyed.'" *Atlanta Consolidated R. Co.* v. *Jackson,* 108 *Ga.* 638,
citing 1 Ballard's Real Prop. § 491.

Now, as to the application of these rules to the covenant under
consideration. The trial judge, in an able opinion delivered when
the judgment was rendered striking the plea of recoupment, held
that the covenant related to a thing merely in posse, and therefore

that it could not bind the assignees in the absence of an express stipulation that they should be bound. He seems to have proceeded upon the idea that because the lessor was not bound under the lease to make any repairs, but might or might not do so at his option, the subject of the covenant was "floating," or uncertain. His honor was doubtless for the moment confused with the idea that the covenant was one by which the landlord agreed at the option of the tenant to make repairs, whereas he in fact expressly declined to undertake any such obligation, and agreed, not to repair, but to reimburse. But assuming the correctness of the premise taken, we can not agree to the correctness of the conclusion reached. The fact that the tenant might or might not make repairs to the wharf or dredge the channel is, in our opinion, unimportant. The question is, was the thing to be repaired or dredged in existence at the time the covenant was made? The affirmative of this question is not disputed. And so, had the covenant been that the landlord should repair, it would not have been necessary, in order to bind the assignees of the reversion, that they should be expressly named.

But, as we have seen, the covenant was to reimburse for repairs which the lessee was permitted to make; and the pivotal question for us to decide is whether this was a covenant so related to the estate or interest created as to run with the land whether the word "assigns" was used or not. A case very closely in point, and one which has been very frequently cited by the text-books and the courts of various States, is that of Bream *v.* Dickerson, 2 Humph. (21 Tenn.) 126. There it appeared that a lease was made for a term of years at a stipulated rental, the lessor covenanting for himself and heirs "to pay and satisfy [the lessees], their heirs and assigns, at the expiration of the lease, the full and fair cash valuation of such improvements as might be standing on the premises at the expiration of the lease, provided it did not exceed the sum of $1,500; this sum, whatever it might be, he reserved to himself the right to pay in one, two, and three years from the expiration of the lease, or to pay the same out of the rents of said improvements, if they would rent for an amount sufficient to pay it." During the term, both the lease and the reversion were assigned, and improvements to an amount greater than $1,500 were placed on the land by the lessees and their assignees. At the expiration of the lease the assignees of the reversion refused to pay any amount for the im-

provements on the land, and the tenants sought to enjoin them from bringing an action of ejectment for the land until they had either paid the value of the improvements or permitted the plaintiffs to receive such value out of the rents and profits. In the opinion the court, speaking through Turley, J., said: "Whether a particular express covenant sufficiently touches and concerns the thing demised as to be capable of running with the land is not unfrequently a question of difficulty, but such as we do not feel it to be in the case now under consideration. There is no covenant on the part of the lessees to improve; they may do so, or not, at their option. The covenant is on the part of the lessor to pay for improvements if they should be made and left standing at the expiration of the lease. A covenant, to run with the land, must *touch* and *concern* it, and it is difficult to see how a covenant to pay a pecuniary consideration for a house, if the tenant shall think proper to erect it, can be said to touch and concern the estate." See also Gardner *v.* Samuels, 116 Cal. 84 (58 Am. St. R. 135); Hansen *v.* Meyer, 81 Ill. 321 (25 Am. R. 282); Etowah Mining Co. *v.* Wills Valley Mining Co., 121 Ala. 672. So, in the present case, we fail to see how a covenant to pay money for purely contingent repairs to be made at the option of the lessor can be said to touch or concern the land, or to have relation to the estate or interest conveyed, so as to constitute it a covenant running with the land. The case of *Atlanta Consolidated R. Co.* v. *Jackson,* 108 *Ga.* 634, while different as to its facts, contains strong authority arguendo for the ruling now made. Whether, had the lessee been bound by the lease to make the repairs, the covenant to reimburse would have been tantamount to a covenant to repair by the lessor, and would have run with the land, *quære?*

2. Having reached the conclusion that the covenant to reimburse did not run with the land, it is easy to decide that the assignee of the reversion, Kehoe, was not bound by its terms by reason of the fact that he took with notice of it and subject to the lease in which it was contained. It is not necessary to decide whether, had the repairs been made subsequently to the purchase by Kehoe, he would have been bound to reimburse by reason of his notice of the covenant in the lease. It appears that there had been a complete breach of this purely personal obligation before Kehoe bought. The only notice with which he was charged was notice that his predecessors in title owed their tenants money for repairs which the latter had

made on the property. While it may be argued with force that he bought the property subject to the subsequent obligations imposed by the lease, it can not seriously be contended that he purchased, along with it, the previously-incurred personal debts of his grantors, growing out of their ownership of the property.

*Judgment affirmed. All the Justices concur.*