35293, 35301. ATLANTIC COAST LINE R. CO. *v.* GEORGIA, ASHBURN, SYLVESTER & CAMILLA RY. CO.; and *vice versa.*

Decided February 17, 1955—Rehearing denied March 7, 1955.

700

702

*Peacock, Perry, Kelley & Walters,* for plaintiff in error.

*Wm. J. Forehand, Custer & Kirbo,* contra.

QUILLIAN, J. We will consider the assignments made in both the main and cross-bills of exceptions, and dispose of them in this opinion. The main bill of exceptions raises the question as to whether the trial court should have granted a nonsuit, that is, whether the plaintiff failed to make out a prima facie case. The cross-bill of exceptions raises the question as to whether the petition failed to set out a cause of action.

In order to appreciate properly the matters for consideration both as to the pleading and proof of the case, it should be noted that there are three covenants contained in the seventh paragraph of the contract entered into by the plaintiff and Flint River & Gulf Railroad Company, defendant's predecessor in title. The first of these is to erect, maintain, and operate gates including derailing switches; the plans of the same and the erection to be approved by the engineer of roadway of the party of the first part.

The second of these provided that, whenever it shall be required by the public authorities of the State of Georgia, or it should be deemed proper and advisable by the party of the first part, an interlocking plant, including the proper protection of the crossing by interlocking signals and derailing switches, shall be constructed and maintained at the said crossing under the plans and direction of the party of the first part. The cost of the installation of said interlocking plant was to be borne by the parties hereto in equal proportions, that is, half and half; but the cost of maintenance of the said interlocking plant and its operation shall be at the sole cost of the party of the second part.

The third covenant was to alter and improve or erect new and improved signals upon demand of the party of the first part, under the same terms as provided for in the original installation.

The suit is predicated upon an alleged breach by the defendant in refusing upon the plaintiff's demand to alter, improve, and erect "new and improved signals."

We shall first consider the sufficiency of the petition.

The demurrer attacks the petition on the ground that the covenant of the contract obligating Flint River & Gulf Railroad Company, the defendant's predecessor in title, to alter, improve, and erect new and approved signal devices, is not binding upon the defendant railroad because it was not a party to the contract; and that the covenants were merely the personal undertaking of Flint River & Gulf Railroad Company, for a breach of which the defendant as its successor in title could not be held liable. It must be conceded that, if the covenant referred to was a covenant running with the land, the successors to the easement granted by the plaintiff under the terms of the contract would be responsible for its faithful performance.

The covenant to improve, alter, or erect new and improved signals, upon demand of the plaintiff, without question did relate to the interest in the easement granted, so that its performance or non-performance did affect the quality, value, and use made of the easement. This is exactly what has been held to constitute a covenant running with the land. *Atlanta, Knoxville &c. Ry. Co.* v. *McKinney*, 124 *Ga.* 929 (53 S. E. 701, 6 L. R. A. (NS) 436, 110 Am. St. R. 215). But the defendant asserts that, in order for a covenant to fall within the category of those running with the land, it must relate to a thing in being, and "when the covenant extends to a thing which is not in being at the time the demise is made, it cannot be appurtenant or annexed to the thing that hath no being." In this connection it is argued with force that, since the new and improved signals were certainly not in being when the contract was signed, they could not be appurtenant or annexed to the lease granted by the contract.

The fact that the signals were not in esse did not bring the covenant in reference to altering, improving, and erecting them within the rule.

In order for the covenant to be construed as one running with the land, unaffected by the rule referred to, it is not necessary that the thing to be supplied by the covenantor, in implementing the use and enjoyment of the demised premises, be in esse when the promise is made so long as that to which it is to be "appurtenant or annexed" is in existence. In *Atlanta, Knoxville &c. Ry. Co.* v. *McKinney*, supra, this principle finds pronouncement.

In the instant case, the crossing of the railroad tracks was

presently existing when the contract was entered into; it was the thing to which the new and improved signals were to be added so as to affect the use and enjoyment of the easement granted.

So we conclude that the covenant in reference to the alterations, improvement, and installation of new and improved signals was a covenant running with the land, so that the defendant, as Flint River & Gulf Railroad Company's successor in title to the easement created by the contract, was bound to perform it.

The defendant contends that the contract upon which the suit is predicated is too indefinite as to the time of its performance to be enforceable. The point is not well taken. The contract is perpetual in its nature. While the defendant enjoys the right to the easement created by it, it must abide by the terms of and perform its valid covenants.

The defendant further urges that the provisions of the covenant by which Flint River & Gulf Railroad Company, its successors and assigns are obligated to erect new signals and alter and improve existing signals, is too indefinite to be enforceable because it does not describe or designate with sufficient particularity the kind of signals, quality, or quantity of signals that must be installed to meet the requirements of the covenant, nor yet, what work is to be done or materials furnished in making the alterations and improvements called for by the covenant.

The words "new and improved" are no more definite than the term "first class and permanent," held by the Supreme Court in *Hart* v. *Georgia Railroad Co.*, 101 *Ga.* 188 (28 S. E. 637), to be too indefinite to serve as a descriptive phrase, and the contract is not any more definite as to what is to be done or furnished in the alterations and improvements of the signals.

The plaintiff insists that the contract stipulates with complete precision what the defendant is obligated to do and furnish in complying with the covenant.

The plaintiff contends that, under certain provisions of the contract, the covenant in reference to the signals was to be performed in a manner satisfactory to it, and that its decision as to what must be done and furnished by the defendant in altering and improving the existing signals and installing new ones was according to the terms of the contract conclusive; hence, that the contract was certain for the reason that it could be made certain

by the plaintiff determining precisely what it would require of the defendant as faithful performance of the covenant.

In this connection the plaintiff stoutly maintains that a contract, which without more particularity defines what is to be done by one under the duty to perform a covenant therein contained, gives to the party for whose benefit the covenant is made the right to require as performance thereof anything in the realm of reason, and is valid and enforceable.

In support of this position, the plaintiff brings to the attention of this court a number of interesting cases of various jurisdictions.

There is a Georgia case, *MacKenzie* v. *Minis*, 132 *Ga.* 323 (63 S. E. 900, 23 L. R. A. (NS) 1003, 16 Ann. Cas. 723), which we think is equally good authority for what is actually held in those cases.

Neither the cases cited by the plaintiff nor *MacKenzie* v. *Minis* hold an undertaking to do the absolute will of another, and to do or supply whatever he may reasonably demand without other limitations and designation of what the promisor must do in the discharge of his promise, is legal and enforceable.

The species of contract to which those authorities refer is the agreement of a promisor to deliver certain goods, render specific services, or erect a described structure to the satisfaction of the promisee. The parties to contracts of that nature know with reasonable certainty what is required of the promisor; there is a meeting of the contracting minds.

Those cases have no application to a situation such as is presented by the facts of this case. This is true because here there was no meeting of the minds of the contracting parties as to what would constitute a performance of the covenant, the performance of which would, except for its indefinite character, be binding upon the defendant. The railroad executives when committing their respective railroads to the contract, could not have contemplated what the plaintiff might in the dim future reasonably require to be done in the alteration, improvement, and installation of the signals. Indeed, the plaintiff's officials could not have conceived any definite idea of what they or their successors in future years might demand.

So, even if the plaintiff is correct in its construction of the contract, there was no meeting of the minds of the parties, plain-

tiff and Flint River & Gulf Railroad Company, the defendant's predecessor in title, as to what was to constitute performance of the covenant for the breach of which the suit was brought. Consequently, the contract would—even accepting the plaintiff's interpretation of it—be unenforceable.

It is well to observe in connection with the subject here discussed that, under the law of this State, to agree that the performance by one party must be satisfactory to the other is not of the same legal import as an agreement to perform the contract to furnish whatever may be reasonably required by another. The former type of agreement simply carries with it the right, whether reasonable or not, to in good faith reject what is offered by the other party as compliance with the contract. *MacKenzie* v. *Minis*, supra. It does give an option to the promisee to choose something else not contemplated by either party to the contract. The latter vests in the promisee the right to choose anything within the scope of reason. The one rests soundly and logically upon the basis of common conception or a meeting of the minds of the contracting parties as to what will amount to carrying out the contract. The latter does not possess that basic foundation.

Moreover, a careful analysis of the contract reveals that it really is not susceptible to the interpretation given it by the plaintiff. The only three expressions contained therein that could be construed to give the plaintiff an option as to what was to be done in the performance of the covenant relating to the signals are: first, the words contained in the first clause, seventh paragraph of the contract, which relates only to the installation of signals and gates, and has no application whatever to the signal referred to in clause three of the same paragraph. In clauses two and three of the paragraph referred to is contained the stipulation that the signals be altered, improved, and installed under the plaintiff's "plans and directions." Both of these phrases relate, not to the quantity and quality of what is to be furnished in complying with the covenant, but simply the manner in which it is to be performed. 12A Words and Phrases, Direction, p. 133; Noice *v.* Schnell, 52 A. L. R. 965.

So the conclusion is inescapable that the contract did not reserve to the plaintiff an unlimited right to determine the nature and extent of the defendant's performance of the covenant referred to.

The plaintiff earnestly argues that, if this contract is held to be too vague to be legally binding upon the defendant, the holding would affect the validity of the many like contracts. The thought is also presented with much force that contracts to be performed or carried out over a considerable period of time can not possess as pronounced quality of certainty and preciseness as those that are to be presently executed. But the courts cannot concern themselves with expediency or look to the industrial welfare of society in making their decisions.

Contracts can be conveniently couched in such language and have embodied in them stipulations that make them certain, even when they are to be performed over long and indefinite periods of time and under ever-changing conditions.

In the contract now under consideration the signals to be supplied could have been legally described as "comparable in number, nature, and design to those commonly used or in vogue in the general territory served by the contract railroads, and by railroads of the class to which either or both of the railroads belonged, at such times as the signals might be installed agreeably to the terms of the contract." Or it might have been provided that such signals be installed as would meet the approval of the public authorities having jurisdiction of such matters at the time of their installation. The vogue in signals might vary, but the requirements of such provisions would always furnish a fixed standard, a criterion as to the kind, quality, and quantity of the signals to be supplied.

The court erred in not sustaining the defendant's general demurrer.

In these circumstances it is hardly necessary to review the decision of the trial court further than to observe that, while the petition set forth no cause of action, the evidence did prove the case as laid therein, and did not disclose any defense to the action that did not clearly appear from the petition itself. So, under authority of *Daniel* v. *Powell*, 45 *Ga. App.* 473 (165 S. E. 173), the court, having overruled the general demurrer, erred in granting the nonsuit.

Let the judgments on both the main bill of exceptions and the cross-bill be reversed.

*Judgment reversed. Felton, C. J., and Nichols, J., concur.*