**TENSTATE DISTRIBUTION COMPANY, Plaintiff,**

v.

**Julian AVERETT, Defendant.**

**Civ. A. No. C 74-432 A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

March 19, 1975.

On Cross-Motions for Summary Judgment
June 14, 1975.

Jule W. Felton, Jr., Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for plaintiff.

Sheldon R. Wittner, Wilkinson & Wittner, Atlanta, Ga., for defendant.

## ORDER

JAMES C. HILL, District Judge.

This action for declaratory judgment and specific performance is before the Court on cross motions for summary judgment. Most of the pertinent facts surrounding the controversy appear not to be disputed.

On October 7, 1964, D. H. Overmyer Warehouse Company of Georgia [1] [hereinafter, Overmyer (Georgia)] granted plaintiff a ten year lease to a portion of the premises known as 3141 Nifda Boulevard, Smyrna, Cobb County, Georgia. Overmyer (Georgia) is a wholly-owned subsidiary of the previous owner of the land, D. H. Overmyer Co., Inc., an Ohio corporation [hereinafter, Overmyer (Ohio)]. It is not apparent on the record why Overmyer (Georgia) leased the land rather than the owner of it, Overmyer (Ohio). The lease provided for two renewal options whereby plaintiff could extend the lease period for:

(a) Five years with a set increase in rent, or

(b) For ten years whereby Overmyer (Georgia) covenanted that it would construct a 30,000 sq. ft. addition to the warehouse already on the premises for plaintiff's benefit at plaintiff's option, and the lease would be extended ten years from the date of completion of the newly constructed space.

Plaintiff had to give written notice to the lessor at least six months before the end of the original or extended term of the lease if it desired to exercise either of these options.

On February 9, 1967, Overmyer (Ohio) entered into a contract of sale whereby defendant purchased the premises from and leased it back to Overmyer (Ohio). Just prior to the purchase, defendant personally inspected the premises, but apparently received no actual notice that plaintiff was in possession of part of the premises as lessee of Overmyer (Georgia).

---

1. On August 12, 1966, the company's charter was amended to change its name to "D. H. Overmyer Co., Inc."

Then, on or about November 19, 1973, Overmyer (Ohio) and its various subsidiaries, including Overmyer (Georgia), instituted Chapter XI bankruptcy proceedings in the United States District Court for the Southern District of New York. That Court authorized the receiver to disaffirm various leases between the Overmyer companies and certain landlords, including the lease between defendant and Overmyer (Ohio), and directed the lessees of the Overmyer companies to pay rent directly to the owners of the property.

On March 12, 1974, plaintiff gave defendant and Overmyer (Ohio) timely notice that it desired to exercise the option which would require the building of the new 30,000 sq. ft. structure. Defendant has refused to honor this covenant, and thus plaintiff brought this action in order to ascertain the rights of the parties in connection with the land.

The Court perceives the issues to be decided are as follows:

1. Did defendant take title to the land subject to the unrecorded lease between plaintiff and Overmyer (Georgia) in that defendant was put on inquiry notice of plaintiff's interest in the land?

2. Did defendant adopt, ratify, or act under the lease so that he became obligated as lessor under its terms?

3. Assuming that the lease is found binding upon defendant, is the covenant in the lease obligating Overmyer (Georgia) to construct the addition to the warehouse a personal promise of the covenantor, or does it run with the land and thus become binding upon defendant?

Counsel has supplied the Court with numerous authorities to support their various contentions. The Court apprehends, however, that this case is unique in that the lessor, Overmyer (Georgia), was not necessarily the owner of the property; there were more tenants than one upon the property; the peculiar nature of a warehousing operation may put a different duty of inquiry upon a prospective buyer; the affirmative nature of the covenant involved could put an onerous duty upon a grantee of the covenantor; and the peculiarities of Georgia landlord and tenant law may change the relationship of the parties.

Consequently, the Court desires the parties to file further briefs and memoranda of law touching upon the following topics. The Court is particularly interested in any case law or other authority from Georgia or other jurisdictions that might be helpful.

1. Does the lease between Overmyer (Georgia) and plaintiff grant plaintiff an estate for years under Ga.Code Ann. § 85–801 or merely an usufruct under Ga.Code Ann. § 61–101? Would this have a bearing upon a covenant running with the land?

2. What is the exact relationship between Overmyer (Ohio) and Overmyer (Georgia), and the effect of Overmyer (Georgia) leasing land owned by Overmyer (Ohio)? In other words, what is the effect upon a third party of action by a subsidiary corporation upon land owned by the parent corporation?

3. What estate passed, or did plaintiff receive an interest or estate in the land, by way of the lease from Overmyer (Georgia)? What power did Overmyer (Georgia) have to transfer an interest in the land?

4. Counsel is invited to comment upon the Georgia Supreme Court case of *Greene v. Golucke,* 202 Ga. 494, 43 S.E. 2d 497 (1947). In *Greene* a person with no power to lease property for the owner, leased the land to the lessee for a five year term with the right to renew for another five year term. The Court held, in a headnote decision, that the acceptance of rent under that lease by the grantee of the true owner did not constitute ratification of the lease by the new owners.

5. What was the intent of the parties as to whether or not the subject covenant would run with the land?

6. Does the fact that plaintiff was not the sole tenant upon the land impose

a different burden of inquiry upon defendant?

7. Does the fact that the land was used for a warehousing operation make any difference as to defendant's notice that plaintiff was in occupation of the premises?

8. Was defendant put on notice of plaintiff's occupation of the premises by any outward signs or indications of plaintiff's presence?

Counsel are directed to file with the Clerk such briefs and memoranda of law dealing with the questions posed by the Court or any other questions counsel feels are pertinent within 20 days of the date of this order. Each side is granted an additional 10 days in which to respond to the opposing side's brief.

## ORDER

### ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This action for declaratory judgment and specific performance is before the Court on cross motions for summary judgment. The pertinent facts are set out in a previous order of this Court dated March 19, 1975. In that order the Court requested supplemental briefs from the parties. Counsel for both sides have filed excellent briefs in response to the questions posed by the Court. After careful consideration of the applicable law and the facts in the record, the Court finds that the action is controlled by the answer to one legal question.

Assuming that the subject lease is binding upon the defendant and that it is an estate for years, is the covenant in the lease obligating the lessor to construct an addition to the warehouse a personal promise of the covenantor, or does it run with the land and thus become binding upon defendant?

The covenant that is at the heart of this litigation reads:

Lessor shall, at the written request of the Lessee during the term hereof, construct at Lessor's sole cost and expense, an extension to the leased premises of approximately Thirty Thousand (30,000) square feet . . allowing space on said premises for rail and truck facilities, all in accordance with the same materials, workmanship, and specifications that were utilized and followed in the construction of the original forty thousand square feet of the leased premises, to be completed within six (6) months of the date of Lessee's request therefor, said extension to be demised, let and leased to the Lessee under the same terms and conditions of this lease . . ..

■ To determine whether the covenant previously recited runs with the land or whether it was the personal covenant of Overmyer (Georgia) is not an easy question to answer. As stated by the Georgia Supreme Court in *Rosen v. Wolff*, 152 Ga. 578, 583, 110 S.E. 877, 880 (1922), "[t]here is much confusion and conflict in the authorities upon the subject of what constitutes a personal covenant and what constitutes a covenant running with the land." The Court has found this to be quite true, but feels that a careful reading of the Georgia cases show that the instant covenant would run with the land only if Overmyer (Georgia) had covenanted for itself, its heirs and assigns.

The starting point for determining whether or not a covenant runs with the land is the landmark decision of Spencer's case, 5 Rep. 16, 1 Smith, L.C. (9th Am. ed.) 174 (1583). This case forms the basis of the Georgia law of covenants and is discussed in *Willcox v. Kehoe*, 124 Ga. 484, 487, 52 S.E. 896, (1905).

Quoting from the language used in [Spencer's case, the limitations placed upon covenants running with the land are]: (1) "When the covenant extends to a thing in esse, parcel of the demise, the thing to be done by force of the covenant is quodammodo annexed and appurtenant to the thing demised, and shall go with the land,

and shall bind the assignee, although he be not bound by express words, but, when the covenant extends to a thing which is not in being at the time of the demise made, it cannot be appurtenant to annexed to the thing which hath no being," and in order for the assignee to be bound he must be expressly named in the covenant. (2) "But although the covenant be for him and his assigns, yet if the thing to be done be merely *collateral to the land,* and doth not touch or concern the thing demised in any sort, there the assignee shall not be charged."

■■ In effect, Spencer's case sets out three principles that cover three different situations.

1. When the covenant extends to a thing in esse, parcel of the demise, the thing to be done by force of the covenant is quodammodo annexed and appurtenant to the thing demised, and shall go with the land, and shall bind the assignee, although he be not bound by express words.

2. If the covenant extends to a thing newly made, it binds the assignee only if the covenantor covenants for himself and his assigns.

3. If the thing to be done is merely collateral to the land, the assignee will not be charged though the covenantor in terms covenants for himself and his assigns.

Pindar, Georgia Real Estate Law, § 22–7 at 850. *See* Tiffany (abridged ed.) p. 89; American Law of Property, § 9.3 et seq.

■■ A covenant will run with the land if it affects the value of the property · or the mode of enjoyment of the property. *Atlanta Consolidated Street Railway v. Jackson,* 108 Ga. 634, 34 S.E. 184 (1899). Since the addition of a new warehouse to the property would certainly affect the value of the land, the covenant in the instant case is clearly not collateral to the land. It would appear that the covenant falls within the second principle set out in Spencer's

case. It is a covenant which is not collateral to the land, but which would be enforceable against an assignee of the covenantor only if the covenantor covenanted for himself and his assigns.

Although the Court has not found any Georgia cases that directly support this conclusion, there is much indirect authority. It must be remembered that the subject matter of this covenant is the new addition to the warehouse. Since this addition wás not built at the time the covenant was made, the covenant pertains to a thing not in esse.

The clearest expression of support in the Georgia cases is found in *Atlanta Consolidated Street Railway v. Jackson, supra,* at 639, 34 S.E. at 185. It was stated in dictum:

All covenants relating to a subject-matter not in esse, such as for the erection of buildings upon the premises demised, are personal covenants, and do not run with the land, so as to bind the assignees, unless they are expressly named therein.

This is clearly the situation set out in the present covenant. The subject-matter of the covenant is a new warehouse (or addition) which was not in existence at the time of the granting of the lease and the making of the covenant. Nowhere in the covenant is there any expression by Overmyer (Georgia) that it was binding its successors and assigns to the covenant. The covenant clearly states that the *"Lessor* shall, at the written request of the Lessee during the term hereof, construct at *Lessor's* sole cost and expense . . ." (emphasis added). The covenant fails to expressly name the assignee of the covenantor as being joined in the covenant, which would have been a simple matter.

The rule as indicated in *Jackson* is supported by numerous other Georgia cases. In *Willcox v. Kehoe, supra,* the covenant in the lease stated that the lessor was not bound to make repairs, alterations, additions, or improvements to the leased premises. However, the lessee at his option could make such re-

pairs and improvements and then charge the cost of them to the landlord at the end of the term up to the amount of $1,200. During the term, the lessee made certain improvements upon the land and then at the end of the term tried to assess the costs against the assignee of the covenantor. In discussing the lower court's opinion, the Court stated 124 Ga. at pages 487–488, 52 S.E. at pages 897–898:

The trial judge, in an able opinion delivered when the judgment was rendered striking the plea of recoupment, held that the covenant related to a thing merely in posse, and therefore that it could not bind the assignees, in the absence of an express stipulation that they should be bound. He seems to have proceeded upon the idea that because the lessor was not bound under the lease to make any repairs, but might or might not do so at his option, the subject of the covenant was was doubtless for the moment confused with the idea that the covenant "floating," or uncertain. His honor was one by which the landlord agreed at the option of the tenant to make repairs, whereas he in fact expressly declined to undertake any such obligation, and agreed, not to repair, but to reimburse. But, assuming the correctness of the premise taken, we cannot agree to the correctness of the conclusion reached. The fact that the tenant might or might not make repairs to the wharf or dredge the channel is, in our opinion, unimportant. *The question is, was the thing to be repaired or dredged in existence at the time the covenant was made?* The affirmative of this question is not disputed. And so, had the covenant been that the landlord should repair, it would not have been necessary, in order to bind the assignees of the reversion, that they should be expressly named.

The clear negative implication of this passage is that if the lessor had covenanted to build or repair a structure not in existence at the time of the granting of the covenant, then in order to bind the assignees of the reversion, they would have to have been expressly named.

Another leading case in this area is *Atlanta, Knoxville and Northern Railway v. McKinney*, 124 Ga 929, 53 S.E. 701 (1905). The covenant in this case stated that petitioner granted to a railroad the right to use water taken from petitioner's property and in exchange the railroad promised to carry to petitioner's house ample water for petitioner's use. The action centered around petitioner trying to enforce this covenant upon the successor in interest of the railroad. After discussing the rule in Spencer's case, the Court determined that the covenant ran with the land. The Court concluded at page 933, 53 S.E. at page 702–703:

But in the present case the facts do not make out a covenant extending to a thing not in esse. The demise is of the right to convey water from certain springs and branches to a water tank. The covenant is to convey a part of such water to the plaintiff's residence. The covenant extends to the water to be conveyed to the plaintiff's residence. *The water is the subject-matter of the covenant.* The manner of conveying it is not even specified. The fact that the machinery for so conveying the water was not in existence does not bring the covenant within the second rule of Spencer's Case. There is an element of futurity in every covenant; a covenant is a promise to do. The manner of its performance is, of course, contemporaneous with its performance, and it is immaterial whether the means upon which the manner of its performance is dependent be or be not in existence at the time the covenant is made. (emphasis added)

This case is thus distinguishable from the instant case in that the Court in *McKinney* explicitly found that the subject-matter of the covenant, the water,

was in esse at the time of the granting of the covenant. The only thing in posse was the means to convey the water. In the instant case not only was the manner of performing the covenant not in existence, but the subject-matter of that performance was not in existence.

Another case concerning a covenant for future construction is *Horne v. Macon Telegraph Publishing Co.*, 142 Ga. 489, 83 S.E. 204 (1914). Edward A. Horne and Amelia Horne were owners, as tenants in common, of adjoining lots in Macon, Georgia. The two lots were divided by each one making to the other a quitclaim deed to the grantor's interest in the other's half. Defendant in the action became the owner of the lot thus owned by Amelia Horne. Edward Horne sold his lot to Alfred Willingham who sold the lot to Jesse Hall. The original deeds between the two Hornes contained a covenant which stated that the owner of the lot, "his heirs and assigns" would have the right to build a party-wall between the property and the expenses would be borne equally between the two owners. The Court ruled that the covenants ran with the land and bound the assigns of the original covenantors because the covenants had been expressly made applicable to heirs and assigns. The Court stated at page 493, 83 S.E. at page 205:

"Thus, an agreement under seal between adjoining lot owners, for themselves, their heirs and assigns, acknowledged and recorded, and providing that either party may build a party wall, one-half on the land of each, and that whenever the other party uses the wall so built he or she shall pay one-half the cost of its erection, is a covenant running with each lot. Such an agreement creates an agreement of use and support in favor of each lot owner and his successors in title in the half of the wall which stood on the other lot, and in the land under the same. * * *" The deeds from Amelia Horne to E. A. Horne, and from E. A. Horne to Ame-

lia Horne, conveyed the land to the grantees, their "heirs and assigns," with the right to build a party wall, and the expense was to be equally borne by the owners of the contiguous lots.

Thus the Georgia Supreme Court here found a covenant for future construction was capable of running with the land where the "heirs and assigns" were bound to the covenant by the original grant. As previously seen, the covenant in the instant case does not bind the heirs and assigns of Overmyer (Georgia).

Finally there are three cases involving railroads which deserve careful attention. The first is *Georgia Southern Railroad v. Reeves*, 64 Ga. 492 (1880). The Court in this case found that a covenant to build a rail depot upon certain land was chargeable to the successor of the covenantor. Without clearly expressing a rule, the Court stated at page 496.

The seller in this case required a benefit for himself and his assigns, and no doubt got less for his land at the time of its conveyance; the buyers, in consideration of that "less present value," covenanted to give him a depot and station, and not only bound *themselves* thereto but their *successors and assigns*; it was so written in the conveyance, so accepted by the purchasers, so enjoyed and appropriated by them, and the Georgia Southern Railroad Company are [sic] the successors in fact and assigns in law of the Selma, Rome and Dalton Railroad Company, and are as much as the original company.

In *Reidsville & Southeastern Railroad v. Baxter*, 13 Ga.App. 357, 79 S.E. 187 (1913), the Georgia Court of Appeals held that a covenant similar to the one discussed above in *Reeves* ran with the land. The Court, however, only discussed whether the covenant had a sufficient interest in the estate conveyed and the act to be done concerned the interest created or conveyed. There is no discus-

sion in the opinion on whether the subject-matter of the covenant was in esse or not. The Court therefore finds that the case is inconclusive on whether a covenant for future construction automatically runs with the land.

The final case is *Atlantic Coast Line Railroad v. Georgia, Ashburn, Sylvester & Camilla Railway*, 91 Ga.App.. 698, 87 S.E.2d 92 (1955). This case dealt with certain improvements made at a point where the lines of the two railroads crossed. Defendant's lines crossed the line of plaintiff pursuant to an easement granted to the Flint River & Gulf Railroad and its successors and assigns. The Court stated at pages 704–05, 87 S. E.2d at page 97:

> The covenant [in the easement] to improve, alter, or erect new and improved signals, upon demand of the plaintiff, without question did relate to the interest in the easement granted, so that its performance or non-performance did affect the quality, value, and use made of the easement. . . . But the defendant asserts that, in order for a covenant to fall within the category of those running with the land, it must relate to a thing in being, and "when the covenant extends to a thing which is not in being at the time the demise is made, it cannot be appurtenant or annexed to the thing that hath no being." In this connection it is argued with force that, since the new and improved signals were certainly not in being when the contract was signed, they could not be appurtenant or annexed to the lease granted by the contract.
>
> The fact that the signals were not in esse did not bring the covenant in reference to altering, improving, and erecting them within the rule.
>
> In order for the covenant to be construed as one running with the land, unaffected by the rule referred to, it is not necessary that the thing to be supplied by the covenantor, in implementing the use and enjoyment of the demised premises, be in esse when the promise is made so long as that to which it is to be "appurtenant or annexed" is in existence. . . .

In the instant case, the crossing of the railroad tracks was presently existing when the contract was entered into; it was the thing to which the new and improved signals were to be added as to affect the use and enjoyment of the easement granted.

While at first blush, *Atlantic Coast Line* appears to support plaintiff's position, the situation in that case is not at all analogous to the instant case. The covenant in *Atlantic Coast Line* was designed to maintain the status quo created by the granting of the easement. In other words, the improvement and additions to the signal lights enabled the parties to continue to use the crossing in a safe reasonable manner and necessitated no substantial change in the existing structure. Neither did the covenant substantially improve or change the relationship of the parties and their interest in the land. On the contrary the covenant in the instant case is designed to substantially change the position of the parties vis-a-vis the land and estate originally granted. Plaintiff's interest in the land would be greatly increased if the warehouse were enlarged. A parallel in the instant case to Atlantic Coast Line would be a covenant that provided that the lessor would be obligated to make improvements, additions, or alterations necessary in order that the lessee could continue to enjoy the present warehouse.

If this had been the situation, then the Court believes that the covenant would attach to the existing warehouse, and thus under the rule set out in *Atlantic Coast Line*, it would be appurtenant to a thing in esse. The Court concludes, however, that whether an addition is made or not, plaintiff still had the use and enjoyment of the present warehouse. The use of the warehouse itself would not be affected by the new addition. Rather than maintaining the relational

status quo between the two parties, the addition would give plaintiff a new interest in the land. The subject-matter of the promise in the covenant was not in esse at the time of the granting of the covenant, therefore in order for it to run with the land, it would have been necessary that the covenantor explicitly bound itself, its successors and assigns. Since this was not done, the Court finds that the covenant is not binding upon defendant.

Since the Court has concluded that the covenant in issue is not binding upon defendant, it cannot grant plaintiff's request for specific performance of the covenant. Further, since the extension option elected by plaintiff is not binding upon defendant, and the lease expired under its original terms on or about October 7, 1974, any interest in the land that plaintiff may still have is not under the Business Property Lease in issue here.

In light of the reasons discussed in this order, the Court denies plaintiff's motion for summary judgment, and grants defendant's motion for summary judgment. The Clerk is directed to enter judgment accordingly.