The MEAD CORPORATION,
Plaintiff-Appellant,

v.

David ABELES, Ira D. Cohen, Solomon Klausner, Edward Probst and Max Scheman, Defendants-Appellees.

No. 74–4069.

United States Court of Appeals,
Fifth Circuit.

April 15, 1976.

Rehearing and Rehearing En Banc Denied June 28, 1976.

Thomas Allan Rice, Atlanta, Ga., for plaintiff-appellant.

Harvey A. Clein, Atlanta, Ga., for defendants-appellees.

Before DYER and CLARK, Circuit Judges, and KRAFT *, District Judge.

DYER, Circuit Judge:

In this interpleader action Mead Corporation (Mead) seeks a determination that it is entitled to set-off against rent due to Cohen Associates (Cohen) certain sums which it had previously expended for repair of premises leased from Cohen's predecessor in title, Overmyer Corporations (Overmyer).[1] The district court determined that a settlement between Mead and Overmyer barred any right Mead may have had to proceed against Cohen. Although we do not reach the precise question resolved by the district court, we agree with its conclusion and affirm.

In 1966, Overmyer leased a warehouse located in Atlanta to Mead. Significant structural repairs were necessary. Under Georgia law, Overmyer was responsible for making these needed repairs, and upon their failure to do so, Mead was authorized by law to make the repairs and recoup all necessary expenses. Ga. Code Ann. § 61–111; *Abrams v. Joel*, 1963, 108 Ga.App. 662, 134 S.E.2d 480. Upon refusal of Overymyer to make the repairs, Mead began repair. Two lawsuits were filed, one by Mead and one by Overmyer, relating to the repair question.

While this litigation was pending, Overmyer executed a sale and leaseback

---

* Senior District Judge of the Eastern District of Pennsylvania, sitting by designation.

1. Four Overmyer corporations are involved in this action. They will be referred to collectively as Overmyer.

with Cohen Associates. The leaseback provided that, as between Cohen and Overmyer, Overmyer was responsible for repairs. Mead, however, was not a party to this agreement.

After the sale and leaseback, Overmyer and Mead entered into a settlement of their dispute, whereby Overmyer paid Mead approximately $120,000, $60,000 in cash and $60,000 in the form of a promissory note. The settlement provided that amounts due to Mead under the promissory note, $2,686.38 per month, would offset any rents due from Mead to Overmyer. The settlement agreement also provided for a release of all claims and causes of action set out in the pending litigation, including the repair controversy.[2] Cohen was not a party to this settlement.

Subsequent to the settlement, Overmyer went into bankruptcy with an outstanding balance of $26,863.80 due to Mead under the note. Without express agreement, Mead and Cohen agreed that rental payments previously due Overmyer would now be due to Cohen, as owner of the warehouse.[3]

Mead contends that although its rents had become payable to Cohen, it could continue to deduct from rent the monthly payment which it was owed by Overmyer for the repair work.[4] Cohen contends that Mead must pay the full rent and look to Overmyer for the remainder of the payments due under the settlement.

Mead's argument is straightforward. First, it argues that the landlord has an obligation to repair, and if he refuses and the tenant repairs, the tenant has an equitable lien on the repaired premises. Thus, Mead concludes that since Overmyer never fully paid for repairs, the property was encumbered with an equitable lien. Second, a purchaser is on notice as to the rights and liabilities of one in possession. Therefore, the equitable lien also binds Cohen, since they are deemed to have notice of the rights of Mead.

Cohen's argument is equally straightforward. They *agree* that after the sale and leaseback and prior to the settlement agreement, Overmyer was personally liable for amounts spent for repairs, and, although Cohen was not personally liable, Mead had an equitable lien on the land owned by Cohen. They argue, however, that the lien only stood as security for the obligation to pay for repairs, that the settlement agreement explicitly satisfied any claim based on the repairs, and that since the obligation has been satisfied, the security for that obligation, the lien, has been released. The district court accepted this approach, and held that although Mead might have proceeded against Cohen prior to the settlement, they were barred from such a course of action after the settlement.

Both Mead and Cohen premise their positions on the existence of an equitable lien to secure amounts paid by a tenant for repair of the demised premises. However, this premise is contrary to the mandate of *West View Corp. v. Thunderbolt Yacht Basin*, 1951, 208 Ga. 93, 65 S.E.2d 167, which we are *Erie*-bound to apply in this interpleader action. In *West View*, the lessee sought,

---

**2.** The agreement provided:

Each party to this agreement and The Wackenhut Corporation is released and fully discharged from all claims, obligations, liabilities, actions and causes of action set out in or embraced by the lawsuits pending in the Superior Court of Fulton County, Georgia, which are described in the premises above. It is the purpose and intent of the parties that this settlement agreement shall constitute a release in full of all such claims, actions and causes of action asserted or embraced in the scope of either of said lawsuits. Each party hereto acknowledges that all of its said claims, actions and causes of action have been satisfied in full and agrees that each of such actions and the counterclaims therein will be immediately dismissed with prejudice.

**3.** As noted in the district court's Injunction and Order Re Interpleader, no objection was expressed by Mead to Cohen's request to the Court that rental payments be paid to Cohen.

**4.** The deductions claimed by Mead constitute the interpleader fund.

*inter alia,* to have a lien impressed against the leased premises to secure the landlord's obligation to pay for improvements made by the lessee. The Supreme Court of Georgia held that even if the lessee were entitled to recover the cost of improvements, he would not be entitled to a special lien to secure payment:

> We know of no statute in this State which gives a tenant a lien for improvements, permanent or otherwise, made on leased premises, where the improvements were made by virtue of an agreement or without an agreement. . . . As a general rule, the failure of a landlord to comply with his agreement to pay the tenant at the expiration of the lease for improvements made by the tenant during the term of the lease entitled the tenant only to an action for the value of the improvements, or for damages. . . It has been held that, in the absence of an agreement between the parties that the value of improvements made by the lessee will constitute a lien against the lessor's property, the lessee cannot claim a lien against such property, though the lessor agrees to pay for such improvements at the expiration of the lease. . . . . Under the allegations in the instant petition, the plaintiff, in the event of recovering a judgment against the defendant, is not entitled to have such judgment declared a special lien against the property of the defendant . . . . .

*West View Corp. v. Thunderbolt Yacht Basin, supra,* 208 Ga. at 98, 65 S.E.2d at 171. In our view, *West View* defeats the premise underlying any possible recovery by Mead. Without an equitable lien on the property owned by Cohen, the transactions set forth above create no rights in favor of Mead other than those against Overmyer.

Mead attempts to dissipate the force of *West View* by comparing that case with *Routon v. Woodbury Banking Company,* 1953, 209 Ga. 706, 75 S.E.2d 561, and *Collier v. Bank of Tupelo,* 1940, 190 Ga. 598, 10 S.E.2d 62. In the eyes of Mead, *West View* stands only for the proposition that the tenant making repairs does not have a "lien" which can be foreclosed, while *Routon* and *Collier* support an equitable charge or encumbrance against the property which may be enforced in equity. We fail to see how *Routon* and *Collier* support this position. Both cases concerned mortgage deeds. Neither considered the landlord-tenant situation present here. Neither mitigate the effect of *West View.*

Mead also seems to argue that Cohen was personally liable for the cost of repairs, apart from any theory of lien. At one point, Mead states in its brief that "the trial court overlooked the fact that . . . Overmyer and Cohen Associates were jointly and concurrently indebted to Mead for cost of repairs to the warehouse." Again, this position is contrary to Georgia law. In *Willcox v. Kehoe,* 1905, 124 Ga. 484, 52 S.E. 896, the Supreme Court of Georgia held that a subsequent purchaser is not personally liable for the breach of a covenant to pay for repairs where the breach occurred prior to his purchase. In such a circumstance, the covenant is personal to the landlord at the time of breach. Although *Willcox* involved a covenant to pay for repairs, rather than an obligation arising under Ga.Code Ann. § 61–111 to pay for repairs, as in this case, the rationale of *Willcox* which holds that a subsequent purchaser is not liable for a breach occurring prior to his purchase is equally applicable here. Thus, no personal liability exists against Cohen.

AFFIRMED.